Edward Elwell, Trustee, et al., Appellees, v. Thomas P. Hicks, Appellant.

Gen. No. 17,502.

1. MORTGAGES—*when mortgagor who has conveyed is liable on foreclosure for deficiency.* Where defendant purchases real estate and gives notes secured by a trust deed in part payment and afterwards conveys a two-thirds interest to two grantees who each agree to assume and pay one-third of the encumbrance a deficiency decree is properly entered against defendant if the real estate when sold under foreclosure does not satisfy the indebtedness.

2. COURTS—*when appellate court is bound to follow supreme court.* The Appellate Court is bound to follow the decision of the Illinois Supreme Court in matters of local law though inconsistent with the U. S. Supreme Court.

3. MORTGAGES—*principal and surety.* While as between the mortgagor and the grantee of the mortgaged property who assumes the mortgage debt, the latter becomes the principal debtor and the former the surety, this is only true between the mortgagor and grantee and the mortgagee may treat them both as principal debtors and have a personal decree against both unless he has agreed to release the mortgagor and look solely to grantee for payment.

4. NOVATION—*where mortgagor conveys mortgaged property.* Where a mortgagor conveys mortgaged property there is no novation unless there is something to show the mortgagee has released the mortgagor and agreed to look solely to the purchaser for payment of the mortgage debt.

5. EVIDENCE—*testimony of grantees of mortgagor where administratrix is complainant.* In a foreclosure case where defend-

ant, the mortgagor, had conveyed a two-thirds interest in the mortgaged property, the grantees are incompetent witnesses to testify that the mortgagee who is deceased agreed to look solely to them for payment of the mortgage debt.

Appeal from the Circuit Court of Cook county; the Hon. John Gibbons, Judge, presiding. Heard in this court at the March term, 1911. Affirmed. Opinion filed May 26, 1913.

Alfred E. Barr, for appellant.

Caswell & Healy, for appellees.

Mr. Justice Brown delivered the opinion of the court.

In March, 1894, Mark K. Collins sold real estate in Chicago to Thomas P. Hicks and took notes for a portion (amounting to $3,300) of the purchase money, secured by a trust deed mortgage from said Thomas P. Hicks to one Edward F. Elwell as trustee.

In August, 1903, there being a default in the payment of the principal and interest of the notes, Mary K. Collins, the holder of the notes, and Edward F. Elwell as trustee, filed their bill in the circuit court to foreclose the trust deed, making Thomas P. Hicks, Stephen P. Hicks and Frederick S. Baird and their wives defendants, as holders of the equity of redemption in possession of said premises.

Although the argument of appellant in this case asserts that the bill was filed to foreclose the said trust deed "for the non-payment of interest," this is placing a construction on the somewhat unartificial language of the bill which it does not properly bear. There is nothing anywhere in this record to show any extension of the principal notes or any of them beyond the time of the filing of this bill, and although the bill unnecessarily alleged that Mary K. Collins had elected to declare and had declared due the whole of said principal sum described in said notes, the bill itself, without this statement, would show that according to

the tenor of the notes there was $3,300 and certain interest thereon due. Nor is there any contention that this principal amount, or any part thereof, has ever been paid. But the attempt to enforce the apparently simple security furnished by this trust deed for a sum of money beyond all question due has been a laborious and prolonged affair, which has reached its final stage only after almost ten years of litigation.

The opportunity for this prolongation of what might have been expected to be a simple matter arose from the following situation: After purchasing the property and giving the notes and trust deed, Thomas P. Hicks, according to the allegations of the bill, at once conveyed a one-third interest in it to Stephen P. Hicks and one-third to Frederick S. Baird, who each "assumed and agreed to pay one-third of said thirty-three hundred dollars encumbrance."

In a joint answer to this bill filed by Thomas P. Hicks and wife, Stephen P. Hicks and wife and Frederick S. Baird and wife, they denied that Thomas P. Hicks had conveyed to Stephen P. Hicks or Frederick S. Baird any right, title or interest in or to said premises, or that either of them had ever assumed any portion of said incumbrance. Said conveyances and assumptions were proved, however, on the hearing before the master by the deeds themselves. The answer, however, set up as a substantive defense that in July, 1903, Mary K. Collins agreed with the defendants to exchange the three $1,100 notes for $33 in cash and a quitclaim deed of the premises in question, and this agreement the defendants were ready to carry out. Contemporaneously the defendants filed a cross-bill, setting up this alleged agreement, representing that since filing her bill Mary K. Collins had departed this life and that Amy E. Hatch had been appointed administratrix with the will annexed of her estate, and praying that the agreement be carried out, and the said Amy E. Hatch, administratrix, be ordered to turn over the notes canceled to the defendants, and

Elwell as trustee be ordered to release the trust deed. The cross-defendants, Hatch and Elwell, answered and denied all knowledge of any such agreement, but alleged that if there was any such agreement it was entirely verbal, and claimed the benefit of the Statute of Frauds.

The Circuit Court after a hearing entered a decree in June, 1905, finding there was due Hatch as administratrix $4,148.37 and interest from the date of the master's report, and $200 as a reasonable solicitor's fees and ordering a foreclosure sale in default of payment. The decree also provided that after the coming in and confirmation of the master's report of sale, in case any deficiency should be shown in the amount due Hatch, administratrix, she should be entitled to execution against the defendants Thomas P. Hicks, Frederick S. Baird and Stephen P. Hicks, "personally liable therefor." The cross-bill was dismissed.

From this decree the defendants Thomas P. Hicks, Stephen P. Hicks and Frederick S. Baird appealed to this court. The cause was assigned to the Branch Appellate Court which on November 23, 1906, reversed the decree and remanded the cause to the circuit court. The only point, however, decided adversely to the complainants in the opinion (*Hicks v. Elwell*, 129 Ill. App. 561) is the one which the judge delivering it says was the principal objection urged to the decree, namely, that following the master's recommendations the court below, in its decree, provided for a possible deficiency decree against Stephen P. Hicks and Frederick S. Baird $390.49 in excess of what a correct computation of interest would make it. The master and circuit court were held to have erred in not giving these two defendants the benefit of a reduction of the rate of interest from May 1, 1897, up to the time of hearing. The court expressly says that the conditional provision of the decree for a deficiency was proper except as to amount. "Such decree," it says, "may be rendered conditionally at the time of

foreclosure or after sale and ascertainment of the balance due.  *  *  *  In the case at bar the decree for deficiency and for execution was entered as it properly might be at the time of foreclosure.''

On the remandment of the cause to the circuit court, however, the cause was again sent to a master and a determined effort made by the defendants to establish the defense against foreclosure alleged in the answer and cross-bill to exist by reason of the alleged agreement by Mrs. Collins in June or July, 1903, to take cash and quitclaim deeds from the defendants and cancel the notes.

The master held, and the court confirmed the holding, by overruling all objections and confirming the master's report, that as the defendants (cross-complainants) were practically seeking a specific performance of a contract for the conveyance of real estate, the Statute of Frauds was a bar to their claim, inasmuch as the only written memorandum referring to the agreement ·contended for, was insufficient to avoid said statute.  This memorandum was as follows:

"July 20, 1903.

Received of F. S. Baird Abstract L. 1, Blk. 4 Gage & McKay's Sub. B. 9, Wright & Webster Sub. of N. E. ¼-12-39-13, from Government to June 30/92 on exchange note for deed.

MRS. MARY K. COLLINS.''

The master also held that, inasmuch as Amy E. Hatch was suing and defending in the capacity of administratrix and objected to the testimony of Baird and Hicks on the ground of interest, their oral testimony was incompetent.  He therefore recommended that the cross-bill be dismissed for want of equity and a decree for foreclosure entered.  The sum due was computed according to the rule laid down in the opinion of the Branch Appellate Court and amounted to $3,965.20.  The circuit court, by a decree May 31, 1907, overruled all exceptions to the master's report, confirmed the same, dismissed the cross-bill and found

that there was due Amy E. Hatch, administratrix, etc., the said sum of $3,965.20 and interest thereon at the lawful rate from May 20, 1907 (the date of the master's report), and $200 for solicitor's fee. It ordered a foreclosure sale and directed the master, if there was a deficiency, to report it to the court.

From this decree the defendants Thomas P. Hicks, Frederick S. Baird and Stephen P. Hicks appealed to this court, and the appeal was heard in the Branch Appellate Court as cause No. 14,020 June 2, 1908. That court affirmed the decree of the circuit court, filing an opinion which is not reported. The Branch Appellate Court in it declared that the master and the court below were right in holding that in view of the fact that the real complainant in this bill was the administratrix of a deceased person, Thomas P. Hicks and Frederick S. Baird were incompetent witnesses as to the agreement concerning the cancellation of the notes, and that "the receipt signed by Mrs. Collins in evidence fell far short of proving the agreement set up in the answer and cross-bill." From this order of affirmance the appellants in the Appellate Court appealed in turn to the Supreme Court.

The Supreme Court affirmed the Appellate Court February 19, 1909, *Elwell v. Hicks,* 238 Ill. 170, holding that the only questions involved related to the appellant's rights under the cross-bill; that the receipt introduced in evidence was not such a memorandum as is required to avoid the Statute of Frauds, and that Baird and Hicks were both incompetent witnesses even if the memorandum could be supplemented by parol evidence. Of Baird it is said:

"He was at the time of the trial, as well as at the time of the alleged interview with Mrs. Collins, interested equally with Hicks and his interest was then and still is antagonistic to the interest of Mrs. Collins."

When the order of affirmance from the Supreme Court had been filed in the circuit court, the foreclosure sale under the decree was made, and by the mas-

ter's report of sale and distribution it appeared that there was a deficiency still due and unpaid to the complainant Hatch, administratrix, etc., of $2,704.10.

A motion having been made for the entry of a deficiency decree against Thomas P. Hicks for the amount of said deficiency, the cause was, on motion of the solicitor for said Thomas P. Hicks, referred (January 17, 1910), to a master to take evidence and report conclusions as to the liability of the defendant for the deficiency.

Before the court and before the master, Thomas P. Hicks objected to the entry of such a decree on the ground that Mary K. Collins, subsequent to the execution of the quitclaim deeds from Thomas P. Hicks to Stephen P. Hicks and Frederick S. Baird, respectively, recognized the said grantees as the principal debtors each for one-third of the amount of the entire indebtedness, and that thereupon Thomas P. Hicks, the original maker of said notes, became merely a surety; that subsequently, shortly after May 1, 1897, the said Mary K. Collins agreed with Baird that the time of payment of his undivided one-third of the principal and interest on said notes should be extended for one year from that date, and that Thomas P. Hicks had no notice of said extension, and by it, inasmuch as he was merely a surety for two-thirds of the entire debt, was released from his liability as to said two-thirds.

The master's report negatived this contention of Thomas P. Hicks on the ground that both Baird, whose deposition was offered before the master, and Thomas P. Hicks, who testified personally before him, and who were the only witnesses whose testimony was presented on the hearing, were interested and incompetent witnesses under the order of reference, and that there was no proof that the said Mrs. Collins ever treated or dealt with the said grantees or either of them as principal in such a way as to make Thomas

P. Hicks merely a surety; and no competent evidence (although Baird's deposition contained such a statement) that the time of payment was ever extended for Baird without the knowledge of the said Thomas P. Hicks.

The circuit court overruled all exceptions to the master's report, confirmed the same and decreed that Thomas P. Hicks pay to Amy E. Hatch, administratrix, etc., the amount of said deficiency, namely, $2,704.10, with interest thereon from the date of said master's sale.

From this decree Thomas P. Hicks prayed and perfected the present appeal to this court, and makes here the same contention as he made before the master. We do not think it is well founded. The primary fallacy of it is the assumption, to quote from appellant's argument, that "the relation of Thomas P. Hicks *automatically* changed under the Illinois law from principal to surety on the notes" when he made deeds of one-third interest each to Stephen P. Hicks and to Frederick S. Baird, respectively, of the premises bought by him from, and mortgaged to, Mary K. Collins.

On this assumption rests the whole contention of the appellant. To justify it he relies on the opinion of the Supreme Court of the United States in *Union Mut. Life Ins. Co. v. Hanford,* 143 U. S. 187.

It is true that in that case the Supreme Court of the United States in February, 1892, seems to say that because, under the law of Illinois, a mortgagee may sue at law a grantee who, by the terms of an absolute conveyance from the mortgagor assumes the payment of the mortgage debt, therefore "the grantee *as soon as the mortgagee knows of the arrangement,* becomes directly and primarily liable to the mortgagee for the debt for which the mortgagor was already liable to the latter *and the relation of the grantee and the grantor towards the mortgagee as well as between*

*themselves,* is thenceforth that of principal and surety for the payment of the mortgage debt.''

But it may be remarked that the court takes occasion to note both in the opinion and statement prefixed thereto, that there was an express assent of the mortgagee to the conveyance (of the entire equity in the premises mortgaged) and the agreement to pay the mortgage debt, and that the court places its decision on the law of Illinois as it is declared by it to be, and admits it to be inconsistent with ''the settled law of this'' (the United States Supreme) ''Court.''

But whatever the language of Mr. Justice Gray in the Hanford case, *supra,* may seem to indicate in the matter involved here, our Supreme Court, whose decisions we are bound to follow in a matter of local law, even if inconsistent with those of the United States Supreme Court, has left us in no doubt what the law of Illinois is on the question.

In *Fish v. Glover,* 154 Ill. 86, in an opinion filed almost three years after the Supreme Court of the United States had decided *Union Mut. Life Ins. Co. v. Hanford, supra,* the Supreme Court of Illinois, in a case where the original mortgagor claimed as against the mortgagee the benefit of rules relating to suretyship, because of the conveyance by him of the equity and the assumption of the indebtedness by the grantee, used this language in deciding adversely to the contention:

''It has been held, that, *as between the mortgagor and the grantee* of the mortgaged property who assumes the mortgage debt, the latter becomes the principal debtor, and the former the surety for the payment of the debt. \* \* \* *But this is only true as between the grantee of the mortgagor assuming the mortgage debt and the mortgagor himself.* As between them, the mortgaged property becomes the primary fund. *But the mortgagee may treat both as principal debtors,* and may have a personal decree against both, unless he has consented to accept such grantee of the mortgagor \* \* \* *as surety merely.''*

After more to the same effect the court quotes approvingly from Jones on Mortgages, secs. 741, 742a:
"There is no novation unless there be something to show that the mortgagee has released the mortgagor, and has agreed to look solely to the purchaser for payment of the mortgage debt. * * * It would be a singular doctrine, if the contract rights of the mortgagee could be changed by any arrangement between the mortgagor and his grantee, to which the mortgagee was not a party."

Five years later, in 1899, the Supreme Court of Illinois said in *Webster v. Fleming*, 178 Ill. 146-157:

"The mortgagor and the grantee from the mortgagor, who assumes the payment of the incumbrances upon the property, are both liable *as principal debtors* to the mortgagee, unless the latter has released the mortgagor from his liability, and has agreed to look *solely* to the purchaser from him for payment of the mortgage debt."

And in October, 1905, in *Scholten v. Barber*, 217 Ill. 148-150, the same court, treating of precisely the same question here presented, said:

"In this State the rule is, that *as between the mortgagor and his grantee* who assumes the payment of the encumbrance, the grantee becomes principal debtor and the mortgagor becomes his surety. But the mortgagee is in no wise affected by the agreement to which he is not a party. *He may disregard it and bring his action against the original debtor only,* or he may accept the promise made for his benefit, and, treating it *as an additional remedy,* bring his action against the grantee. If the agreement is accepted by the mortgagee, each party to it is an *original promisor* for the payment of the encumbrance, but the contract rights of the mortgagee cannot be changed by any arrangement between the mortgagor and his grantee unless the mortgagee agrees to such change."

The law of Missouri was invoked in this case and the court points out that evidence that the law of Missouri in cases where the grantee assumes and agrees to pay an existing encumbrance is different from this

Illinois rule and like that contended for by appellant herein, does not tend to prove that the law of Missouri applicable to the case at bar is different from that of Illinois because the grantee did not assume or agree to pay the encumbrance.

The italics in the quotations we have made are of course our own. The doctrine laid down is very different from that insisted on by the appellant and attributed to the Federal Supreme Court, that an "automatic" change is worked on a mortgagor's liability when he conveys to one who assumes the mortgage.

In the case at bar there is no evidence, even if all that Baird and Hicks testified to at any time during its progress should be held competent and relevant, that Mrs. Collins or her representatives ever consented to accept Thomas P. Hicks "as surety merely," nor that she "agreed to look solely" to Stephen P. Hicks and Frederick S. Baird for the whole or any part of the mortgage debt. In this application for a deficiency judgment Mrs. Collins' representative has in effect disregarded the additional promises and brought her action against the original debtor only.

We think this so clearly disposes of the matter that it is unnecessary to discuss the incompetency of Baird and Thomas P. Hicks as witnesses. Without their testimony there cannot be made for Thomas P. Hicks even the pretext of defense against this deficiency judgment. Despite the ingenious arguments of counsel, we do not think they were competent witnesses at this final stage and in this final section of the cause, any more than they were when they were adjudged not to be by this court and the Supreme Court during its progress.

The decree of the Circuit Court is affirmed.

*Affirmed.*