### Jennie M. Morganroth, Appellee, v. Abe Pink, Appellant.

### Gen. No. 27,646.

1. APPEAL AND ERROR—*law of the case.* The decision of the Appellate Court on an appeal is the law of the case, binding all parties, the trial court and the Appellate Court upon a subsequent trial of the same cause, as to all matters involved in the prior appeal.

2. MORTGAGES—*when extension to mortgagor's grantee not release of mortgagor.* The maker of a note secured by trust deed is not released from payment of such note by the fact that the holder thereof, who is the mortgagee, has granted an extension of time of payment to the grantee of the mortgaged premises by mesne conveyances from the mortgagor, the conveyance having been made without the mortgagee's knowledge and there being no agreement by her to look only to the grantee for payment.

Appeal by defendant from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in this court at the March term, 1922. Affirmed. Opinion filed December 11, 1922. *Certiorari* denied by Supreme Court (making opinion final).

MAYER, MEYER, AUSTRIAN & PLATT, for appellant.

RUDOLPH D. HUSZAGH, for appellee.

MR. PRESIDING JUSTICE MCSURELY delivered the opinion of the court.

This is the second time this case has been before us on appeal; see opinion reported in 216 Ill. App. 158, where the case is stated substantially as follows: Judgment for $9,695.25 was entered by confession on a note which had been signed, indorsed and delivered by defendant to plaintiff, with a trust deed conveying as security certain real estate in Chicago. Subsequently defendant sold the real estate, his deed reciting that the sale was subject to the trust deed, the grantee assuming and agreeing to pay the indebted-

ness secured thereby.  Afterwards one Rosa Emmo obtained title by mesne conveyance.  It now appears that she took title by a warranty deed in the statutory form, which did not mention or refer to the trust deed or the indebtedness secured thereby.  About the time the note matured plaintiff, the holder of the note and trust deed, agreed with Rosa Emmo to extend the time of payment for five years, but defendant, the maker of the note, had no knowledge of this.

Defendant was permitted to plead these facts as a defense to plaintiff's action.  Demurrers were interposed to such pleas, which were overruled, and plaintiff electing to stand by her demurrers judgment of *nil capiat* followed.  Upon the prior appeal this judgment was reversed and the cause remanded with directions to sustain the demurrers.  The reason which moved this court to this conclusion was that the mere fact of the agreement for an extension of the maturity of the note did not automatically and of itself release Pink, the maker of the note.  For convenience we quote from our prior opinion:

"The questions here involved we do not regard as open in this court.  They have been settled by the decision of this court in *Seeman v. Mills*, 197 Ill. App. 589, and all the other questions, except that of the legal effect of extending the time of payment without the maker's consent, have been passed upon in *Elwell v. Hicks*, 180 Ill. App. 554; *Fish v. Glover*, 154 Ill. 86; *Webster v. Fleming*, 178 Ill. 146; and *Scholten v. Barber*, 217 Ill. 148.  These cases, we hold, are decisive of the rights of the parties to this appeal.

"As between a mortgagor and the grantee of mortgaged property who assumes a mortgage debt, the grantee becomes the principal debtor and the grantor the surety for the payment of the debt.  The analogy extends no further.  As between the grantee and the mortgagor the property becomes the primary fund while the mortgagee may hold both as principal debtors unless the mortgagee has consented to accept the grantee of the maker of the note and trust deed as sole

principal debtor; and in *Webster v. Fleming, supra,* it was held that: 'The mortgagor and the grantee from the mortgagor, who assumes the payment of the incumbrance upon the property are both liable as principal debtors to the mortgagee, unless the latter has released the mortgagor from his liability, and has agreed to look solely to the purchaser from him for payment of the mortgage debt.'

"In *Scholten v. Barber, supra,* the same question here presented was decided, the court saying: 'In this State the rule is, that as between the mortgagor and his grantee who assumes the payment of the incumbrance, the grantee becomes principal debtor and the mortgagor becomes his surety. But the mortgagee is in no wise affected by the agreement to which he is not a party. He may disregard it and bring his action against the original debtor only, or he may accept the promise made for his benefit, and, treating it as an additional remedy, bring his action against the grantee. If the agreement is accepted by the mortgagee, each party to it is an original promisor for the payment of the incumbrance, but the contract rights of the mortgagee cannot be changed by any arrangement between the mortgagor and his grantee unless the mortgagee agrees to such change.'

"The Supreme court in these cases, when it refers to an agreement by the mortgagee, means an agreement in fact, not one resting in any presumption of law, because there is no such presumption. * * *

"Again, as the court said in *Fish v. Glover, supra,* so we say: 'It would be a singular doctrine if the contract rights of the mortgagee could be changed by any arrangement between the mortgagor and his grantee, to which the mortgagee was not a party.' * * *

"In other words, the maker of the note and mortgage is primarily liable to the legal holder within the statute of limitations until the note has been paid either by himself or some one for him, unless there is an agreement between such maker and the mortgagee to look solely to such subsequent grantee for payment. Such agreement is not one raised by implication of

law from the fact of the extension of payment without notice to or the consent of such maker.''

Defendant's counsel now forcefully argue against our decision, but we must adhere to the rule that whatever was determined by this court on the former appeal is *res adjudicata* and the law of this case, and is binding on the parties, the trial court and this court in this case for all time. *Union Nat. Bank of Chicago v. Hines,* 187 Ill. 109; *Baum v. Hartmann,* 238 Ill. 519; *Wolkan v. Wolkan,* 217 Ill. App. 471.

In *Denison University v. Manning,* 65 Ohio St. 138, the facts are on all fours with the instant case. The court there said that the proposition was not that the mortgagee agreed to release the original debtor, but that the effect in law of the consent of the mortgagee that the purchaser may pay, *ipso facto,* works a change in the relation of the principal maker to the note. The opinion, recognizing a contrariety of decisions, proceeds:

''That, as between the mortgagor and the purchaser, the general relation of surety and principal may be created by reason of their contract, can be conceded, but this falls very far short of changing the relation of a mortgagor from a principal to a surety as respects the mortgagee. The mortgagor has received the full consideration and has executed his solemn promise in writing to pay the obligation unconditionally. The sale of the mortgaged property is made between the parties to it solely for their advantage, and in no sense for the benefit of the mortgagee. He need not know, and ordinarily does not know, anything about the transaction until after it is completed. If he happens to know that the negotiation is in progress, it is not within his power to arrest it, nor has he any voice in shaping it. He is as absolutely helpless to prevent it as is a total stranger. Incidentally it may work to his advantage. That is, being an agreement with the original payor to pay the debt, the creditor may, if he so elect, take advantage of it. *Emmitt v. Brophy,* 42 Ohio St. 82. But the agreement is not

made for his benefit; as before stated, it is wholly for the benefit of the parties to it. Nor could they compel the mortgagee to recognize the sale or look to the purchaser for the payment of the debt. * * *

"This being the situation, why should the mortgagor be accorded the right to compel the mortgagee to elect between a repudiation of the obligation thus assumed by the purchaser and a novation by which he releases the original debtor from his obligation as principal, and consents that from thenceforth he shall be regarded as surety only? Why should the creditor be compelled to trade debtors or release any security he already holds? Whether the obligation is paid by the maker or by one to whom he has transferred the property forming the security is a matter of indifference to the payee; for that purpose one hand is as good as another. We are of the opinion that the proposition is not sound, that the facts stated do not show that the Mannings (the mortgagors) became sureties as between them and the University (the mortgagee). Hence, the further proposition that the Mannings are released because of the 'alleged agreement to extend the time for payment of the principal, by reason of a promise to pay seven per cent interest, without their consent, is without support in law. It is urged that the allegation of an agreement to extend the time of payment of itself implies in law a previous agreement to accept the purchasers as principal debtors. We are of opinion that it does not. The mortgagee, being under no obligation to accept the purchasers as principal debtors, or as debtors of any kind, had a legal right to exonerate them from direct obligation to it altogether and a fortiori could assent to relieve them for a time. It is further urged that the Mannings were damaged by this agreement. How? The simple delay was not a matter of which they could find fault. (Dye v. Dye, 21 Ohio St. 86; Moore v. Gray, 26 Ohio St. 525.) And we have already found that they could not compel the creditor to sue the purchasers; nor could they complain of an agreement between the purchaser and mortgagee unless they were thereby deprived of some existing right, though, as between them

and the purchasers, they were sureties. Using the language of the court in *Jenkins v. Clarkson,* 7 Ohio (pt. 1), 76: 'If the surety has been deprived of no right, if he has been left perfectly free to manage his concerns with his principal in his own way, if his hands have not been tied, why should he complain?' They would not be deprived of their right at any time to pay off the debt and proceed against the purchaser on his assumption of its payment. Not being parties to the agreement for an extension, they were not bound by it, and all the remedies that they possessed before the extension remained to them after.''

When did the relation of Pink to the note change from that of maker to that of surety? Concededly not when he sold the real estate without the knowledge or consent of the holder, and certainly not by reason of any subsequent conveyances to which the holder was not a party. So that, defendant must argue, the maker changed to a surety when the holder made an extension agreement with the last grantee. But defendant asserts that by this agreement the maker was released from all obligation; that is *eo instante,* he became a surety and also a released debtor. We do not believe that the extension agreement effected this incongruity.

Upon the second hearing in the trial court, evidence was heard but nothing was shown which would modify the effect of our conclusion upon the principal question involved.

Upon this hearing the trial court followed our views of the law expressed in our prior opinion and held that the judgment should stand in full force and effect as of the day it was rendered.

For the reasons above stated this judgment is affirmed.

*Affirmed.*

DEVER and MATCHETT, JJ., concur.