Jesse Binga, Complainant and Plaintiff in Error, v. Thomas E. Bell et al., Defendants. Bertha K. Chittenden, Defendant in Error.

## Gen. No. 34,032.

Heard in the second division of this court for the first district at the February term, 1930. Opinion filed December 16, 1930.

A. M. BURROUGHS, for plaintiff in error; J. W. HALLAM, of counsel.

JOHN C. GARRIOTT, JR., for defendant in error; JAMES J. DANAHER, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

In a foreclosure proceeding a decree of sale was entered by the superior court of Cook county on April 1, 1929. At the sale, held on April 23, 1929, the premises were sold to complainant, Jesse Binga, for $10,000. In the master's report of sale he stated

that the proceeds were not sufficient to pay the amount due to complainant, that there was a deficiency of $5,236.49, and that complainant was entitled to a deficiency decree for said sum and interest against James Hill and Mae Allen Hill, his wife, and Bertha K. Chittenden. In the court's decree confirming the sale, entered June 17, 1929, it was ordered that complainant have judgment against James Hill and Mae Allen Hill for the amount of the deficiency and interest, but the court stated that complainant's motion, then made, for a deficiency judgment against *Bertha K. Chittenden* be overruled "for reasons given in the decree of sale entered on April 1, 1929." In that decree there are the following findings, among others:

"And the court finds from the facts shown that complainant is not entitled to a judgment or deficiency decree against Bertha K. Chittenden for any deficiency after the sale of the premises herein, for the reason that complainant purchased the trust deed and notes of Bertha K. Chittenden from the Northern Trust Company and agreed to loan James Hill and Mae Allen Hill the sum of $15,000, out of which amount the trust deed and notes of said Bertha K. Chittenden *were to be paid and cancelled;* that the Binga State Bank sold the bonds comprising the fifteen thousand dollar loan after they were issued and delivered, and *retained the proceeds for over two years,* which issue and sale *constituted an extension of the trust deed and notes without her consent,* thereby releasing said Bertha K. Chittenden from any liability, by reason of the failure of James Hill and Mae Allen Hill, or the owners of the premises described in said trust deed, to pay the lien of complainant."

The sole question involved in the present writ of error is whether, under the facts in evidence and the law, the superior court erred in refusing, on complainant's motion, to enter a deficiency decree against Bertha K. Chittenden for the sum of $5,236.49.

The facts as disclosed from the evidence are substantially as follows: The premises involved are improved with a three-story brick building, known as 515-19 East 36th Place, Chicago. On or about June 1, 1924, Bertha K. Chittenden, a widow, purchased them from the then owner. About the same time she executed and delivered her principal promissory note for $10,400, dated June 1, 1924, due on or before two years after date, with interest at 6 per cent per annum, payable semi-annually, as evidenced by four interest coupon notes of $312 each. All the notes were payable to her own order and by her indorsed. To secure them she executed and delivered a trust deed (which was a first mortgage and contained the usual covenants) conveying the premises to the Northern Trust Company, as trustee. The deed was recorded on October 2, 1924. Thereafter the first three coupon notes were paid and canceled, but neither the last coupon note, due June 1, 1926, for $312, nor the principal note for $10,400, due on the same date, were paid by Mrs. Chittenden or any of the grantees of the premises. After the recording of the trust deed and before the maturity of the principal note the premises were sold and conveyed to James Hill and Mae Allen Hill subject to the mortgage, which they assumed and agreed to pay. While the Hills were the owners of the premises they, in July, 1925, placed a second mortgage thereon to secure certain notes executed by them. During April, 1926, before the maturity of said principal note of $10,400, and said coupon note, James Hill had a conversation with complainant, Jesse Binga, who was the president of the Binga State Bank. He informed Binga of the incumbrances on the premises, that the principal note of $10,400 and said coupon note, secured by said first mortgage, were held by the Northern Trust Company, and that, upon request to renew the mortgage, it had refused to do so and had demanded payment of the entire indebtedness at maturity, June 1, 1926. Hill

further stated to Binga that he desired the Binga Bank to loan him sufficient money to pay off the first mortgage and certain additional sums, taking a new first mortgage as security for the loan. Binga said that he would "take care" of the matter. During May, 1926, Hill informed Binga that he had a prospective purchaser of the premises and asked Binga what arrangements had been made for the refinancing, and Binga thereupon directed an employee of the Binga Bank, Miss Cantey, "to take care of the mortgage." Many other conferences were thereafter had between Hill and Binga or representatives of the Binga Bank. At some of these conferences the prospective purchaser, William L. Dawson, was present. On July 16, 1926, acting upon Binga's advice and in pursuance of his plan of refinancing, the two Hills by quitclaim deed conveyed the premises to one Booker T. McGraw. On the same day McGraw made written application to the Binga Bank for a loan of $15,000, to be due in 3 years from that date with semi-annual interest at 7 per cent per annum, to be secured by a *first* trust deed on the premises. In the application McGraw stated he would furnish a guaranty policy showing a fee simple title in him to the premises, would pay as a commission $750 for negotiating the loan, and that the two mortgages at present on the premises, viz., a first for $10,400 and a second for $3,000, were "to be paid." On the same day McGraw executed and delivered to the Binga Bank his 15 notes or bonds, each dated July 16, 1926, and each for $1,000 ($15,000 in all), payable to bearer 3 years after date, with interest at 7 per cent per annum payable semi-annually, as evidenced by six coupons for $35 each attached to each bond. To secure the bonds McGraw executed and delivered to the Binga Bank a trust deed, signed by him on the same day, conveying the premises to the Chicago Title & Trust Co., as trustee. This trust deed

was recorded on July 22, 1926. The day after McGraw. had executed and delivered the bonds and trust deed, to wit, on July 17, 1926, either the Binga Bank or Jesse Binga purchased of the Northern Trust Co. the principal note of $10,400 and the last coupon note, signed by Mrs. Chittenden and secured by the *original* first mortgage on the premises. It appears that A. M. Burroughs, attorney for the Binga Bank, on that day called at the offices of the Northern Trust Co. and delivered to it a cashier's check of the Binga Bank for $10,807.61 (being the amount due on said notes with interest, etc.). In turn Burroughs was given the two notes, the original trust deed and two insurance policies on the building on the premises. He signed a receipt for the papers in the name of ''Binga State Bank,'' and delivered them to Jesse Binga. Thereafter, about August 18, 1926, in pursuance of an agreement of the Hills with William L. Dawson, the premises were conveyed to Dawson (and subsequently by Dawson to Thomas E. Bell), subject to the $15,000 mortgage given by McGraw and securing said bonds, which were in the hands of the Binga Bank for the purpose of sale by it. But the Binga Bank did not in fact, as had been arranged and agreed, pay the principal note of $10,400 or said last coupon note, which Mrs. Chittenden had executed together with said *original* first mortgage, and which notes and mortgage the Hills when they purchased the premises had assumed and agreed to pay. The Bank, however, did cause to be paid the notes secured by the second mortgage given by the Hills. Thereafter the Binga Bank, during the year 1927, sold to customers, at par and accrued interest, *all* of the $15,000 worth of bonds, executed by McGraw, and used the proceeds. At the time the present bill to foreclose was filed, May 22, 1928, all of these bonds were still outstanding in said customers' hands. Indeed, on one of the hearings be-

fore the master as late as November 9, 1928, the cashier of the Binga Bank, C. N. Langston, testified that said bonds were still outstanding. However, prior to the next hearing before the master on November 14, 1928, the Binga Bank saw fit to call in all of said bonds and to redeem them, and at the time of said hearing the same were again in its possession, as testified by Langston. It further appeared from the evidence that the Hills never received any notice from the Binga Bank or Jesse Binga, until the filing of the present bill, that the notes signed by Mrs. Chittenden had not been paid and canceled, as it had been agreed they would be. And we find no evidence whatever that Mrs. Chittenden, defendant in error, was in any way a party to the refinancing negotiations between the Hills and the Binga Bank or Jesse Binga, or had any knowledge thereof, or consented to any of the acts done as above outlined in pursuance of such negotiations. Nor does it appear that any demand was ever made upon her to pay said principal note of $10,400, or said last coupon note, by the Binga Bank or Jesse Binga; nor does it appear that any notice, prior to the filing of complainant's bill, was given to her that said notes had not been paid or that the trust deed securing them had not been canceled.

In view of the facts in evidence, as above outlined, we think that the court was fully warranted in denying complainant's motion for the entry of a deficiency decree against Mrs. Chittenden in the sum of $5,236.49, and in finding in substance that the arrangement for the issuance of said bonds in the sum of $15,000, the sale of said bonds by the Binga Bank and its retention of the proceeds thereof for a period of over two years (all with the knowledge and approval of Jesse Binga) constituted or amounted to an extension of the notes, signed by Mrs. Chittenden, without her consent, and thereby released her from any further liability thereon.

Although the decisions of the courts of review in this State, and in other States, have not been harmonious, we think that the clear weight of authority supports the proposition that if a mortgagee, wth knowledge of the conveyance of the property and the assumption by the grantee of the mortgage debt, extends the time of payment by a valid agreement between him and the grantee, such extension operates to discharge the original mortgagor, unless such extension is assented to by said mortgagor. (See note in 41 A. L. R. p. 282–5.) In the recent case of *Albee v. Gross,* 250 Ill. App. 98, it was decided by the Appellate Court for the second district in substance that where a mortgagor sells the premises to one who agrees to assume the mortgage debt, and such purchaser sells to another who likewise assumes said debt, an agreement of the mortgagee with the last purchaser, extending the time of payment for a consideration and without the knowledge or consent of the mortgagor or his grantee, releases said mortgagor and his grantee from liability under a deficiency decree upon foreclosure and sale. On an application to the Supreme Court for *certiorari* to review said decision the writ was denied. (250 Ill. App. xxix.) In the opinion in the *Albee* case numerous decisions of the Supreme and Appellate Courts of this State are referred to or discussed, as are also cases in other jurisdictions, including *In re Roth,* 272 Fed. 516, 520, and *Union Mutual Life Ins. Co. v. Hanford,* 143 U. S. 187, 191, to the holdings in which last named cases we also here refer. In the still later case of *Douglass v. Ullsperger,* 251 Ill. App. 145, it was decided by the first division of the Appellate Court for the first district, in substance, that a mortgagor of realty is released from further liability, after he has conveyed the property to a grantee who assumed and agreed to pay the mortgage debt, and said grantee and the mortgagee enter into an agreement, without the

knowledge or consent of the mortgagor, whereby the time of paying the said mortgage debt is extended.

We conclude that the order or decree of the superior court, entered on June 17, 1929, wherein the court refused on complainant's motion to enter a deficiency decree against Bertha K. Chittenden for the sum of $5,236.49, was right and should be affirmed, and it is so ordered.

*Affirmed.*

SCANLAN, P. J., and BARNES, J., concur.