Sarah R. Nudelman, Appellee, v. Samuel Mayer Haimowitz and Rose Y. Haimowitz, Appellants.

Gen. No. 41,878.

Heard in the first division of this court for the first district at the October term, 1941. Opinion filed April 20, 1942. Rehearing denied May 5, 1942.

GILRUTH & BECK, of Chicago, for appellants.

URION, BISHOP & SLADKEY, of Chicago, for appellee; JEROME J. SLADKEY, of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Defendants Haimowitz (also known as Homan) appeal from a decree of foreclosure entered February 5, 1941. Nicholas Nudelman, codefendant, does not appeal. Plaintiff, Sarah Nudelman, is a sister-in-law of Nicholas.

Nicholas Nudelman and Homan on June 8, 1925, were copartners and co-owners of the premises. On that date they executed and delivered the trust deed to secure three notes, two for $2,500 each, one for $45,000. The notes for $2,500 each have been paid. June 9, 1930, time of payment was extended. The

$45,000 note was to be paid in instalments, the last June 9, 1935. Neither principal nor interest has been paid. The owner transferred the note and trust deed to the First National Bank of Chicago. At different times Homan and Nicholas Nudelman negotiated with the bank to acquire the note at a discount. Neither was at first successful. Nicholas Nudelman again tried through Samuel Salmon. October 19, 1932, he made a contract to acquire the securities and on July 13, 1937, became the owner and secured possession at a cost to him of $12,977.65.

August 18, 1937, Nicholas Nudelman sold the note and mortgage to plaintiff, Sarah R. Nudelman, his sister-in-law. She testified she paid $12,500—$5,000 in cash and $7,500 by her note to the order of Nicholas Nudelman. Neither the interest nor principal of her note has been paid. She began this suit to foreclose against the Homans and her brother-in-law, Nudelman, February 25, 1939.

The cause was heard on exceptions to the report of a master. The decree finds the indebtedness of defendants on the note to be $79,584.76, directs sale of the premises, and the court retains jurisdiction to enter a deficiency decree and appoint a receiver pending the period of redemption.

As the hearing progressed new facts were brought to light and the pleadings of defendants were from time to time amended. In substance two defenses were interposed: first, that the suit was not filed in good faith but pursuant to an unlawful conspiracy between Nicholas Nudelman and his sister-in-law for his own benefit at the expense of his partner; and secondly, that the note was in fact discharged July 13, 1937, when Nicholas Nudelman obtained title and possession of it. (Smith-Hurd's Ann. Stats., ch. 98, § 118, par. 140 [Jones Ill. Stats. Ann. 89.140].)

Nicholas Nudelman and the bank made an agreement March 25, 1935, by which the amount to be paid

to the owner bank was set at $20,000—$8,000 in cash and the collateral note of Nicholas Nudelman for the balance. Homan was notified that Nicholas Nudelman had purchased the note for $20,000 and an offer was made to him to share benefits upon contributing his share—one half of the amount. He declined the offer. The final deal was concluded July 13, 1937, when Nicholas Nudelman obtained the securities for $12,977.76. Homan was not asked to share on that basis. The facts with reference to this settlement were never disclosed to Homan, and he was never offered the benefits. August 18, 1937, the transfer of the note and trust deed was made by Nicholas Nudelman to plaintiff, Sarah R. Nudelman. She testifies she paid $5,000 and gave her note for $7,500—a consideration of $12,500. Neither her note nor any interest on it has been paid.

Plaintiff disclaims any contention that she took the note as a holder in due course within the meaning of section 52 of the Negotiable Instruments Act (Smith-Hurd's Ann. Stats. ch. 98, p. 165 [Jones Ill. Stats. Ann. 89.072]). She suggests she may be regarded, however, as such a holder standing in the shoes of the First National Bank under section 58 of the Negotiable Instruments Act (Ill. Rev. Stat., ch. 98, par. 78, p. 2183 [Jones Ill. Stats. Ann. 89.078]). Plaintiff is not entitled to the benefits of that section. If she has any title she takes it from Nicholas Nudelman. The alleged purchase by her was made about seven years after the maturity of the note, and she is charged with notice of all equities.

Plaintiff contends that at any rate she is an innocent purchaser for value and says that the question of whether she is a *bona fide* holder within the meaning of the statute is wholly immaterial. She says there is no defense to the note on the merits since defendants obtained cash for it, and there is no failure of consideration for fraud. She says the only defense

interposed arises out of extraneous and collateral circumstances and that such defense may not be urged as against an innocent purchaser for value. She cites *Daniels v. Carr*, 233 Ill. App. 531, and *Schultz v. Sroelowitz*, 191 Ill. 249. The defense here interposed is that the note of Nudelman and Haimowitz was paid by Nicholas Nudelman to the First National Bank. Defendants contend (if we understand aright) that when Nicholas Nudelman purchased the note it was paid and Homan's obligation as comaker and copartner arose to pay to Nudelman one half of the amount Nudelman paid in taking up the note, and since plaintiff took after maturity, when the note had been paid, and with the intention to obtain an unconscionable advantage, she cannot maintain this suit. These are not defenses arising out of extraneous circumstances, as in the cases cited.

We have no doubt this suit between Sarah Nudelman and Nicholas Nudelman is by design on their part. There are many suspicious circumstances connected with the purchase of the note and their conduct seems to point to this conclusion. We have read plaintiff's testimony carefully. The undisputed facts that she is the sister-in-law of Nicholas Nudelman, that she took the note seven years after it matured, that Nicholas Nudelman seems well content to let plaintiff have a judgment against him and his cotenant for $79,584.76, based on a note purchased from him by plaintiff for $12,500 ($7,500 of which was her own note, which has not been paid and on which no interest has been paid), are only a few of many facts which lead to this conclusion. The deal between these relatives cannot reasonably be explained on any theory other than the desire to obtain an unjust advantage over the Homans for their own benefit.

When Nicholas Nudelman acquired the note and trust deed from the First National Bank he took paper on which he and the Homans were primarily liable.

Homan was a joint maker of the note, a cotenant of the land covered by the trust deed and the partner in the premises with Nicholas Nudelman. Both were bound at all events to pay the note. Either one who paid it was entitled to contribution from the other. There was nothing voluntary about this. Homan's obligation to pay his share of the cost of taking up the note was absolute. His right to share in the benefits of any discount obtained by his partner was also absolute. *Titsworth v. Stout,* 49 Ill. 78; *Carabelli v. Carabelli,* 266 Ill. App. 453. In the *Carabelli* case this court said at pp. 460, 461: ''The right of contribution rests upon the principle that where all are equally liable for the payment of a debt all are bound equally to contribute to that purpose. (*Sledge v. Dobbs,* 254 Ill. 130, 133); and where one tenant in common had removed an incumbrance from the common estate the other tenants must contribute to the extent of their respective interests, and to secure such contribution an equitable lien upon their interest of the same character with that which has been removed will be enforced by a court of chancery. The redeeming tenant in common, in order to secure contribution, is substituted to the same lien which he has redeemed (*Titsworth v. Stout,* 49 Ill. 78, 80), and the principle is equally applicable to the judgment creditor of a tenant in common. (*Fischer v. Eslaman,* 68 Ill. 78, 83.)''

Section 118 of the Negotiable Instruments Act (Smith-Hurd's Ann. Stats., ch. 98, par. 140 [Jones Ill. Stats. Ann. 89.140]) states the law as to the manner in which makers of negotiable instruments primarily liable may be discharged. Section 118 (4) declares such discharge takes place ''when the principal debtor becomes the holder of the instrument at or after maturity, in his own right.'' Plaintiff says this provision is not applicable here because there were two makers. She construes the word ''debtor'' as making the provision applicable only to a case where a single

debtor takes up his own paper. We do not think it necessary to decide this point. *Prudential Ins. Co. of America v. Bass,* 357 Ill. 72, 78. Equity would, we hold, if such were the intention of the parties, keep the note and mortgage alive and subrogate Nicholas Nudelman to the rights of the bank in so far as necessary to protect his right of contribution from Homan for one half the amount paid to the bank. Plaintiff says Homan and Nicholas Nudelman had each conveyed their one-half interest in the premises and that thereby a triple surety relationship existed which made them only secondarily liable on the note, and that section 120 (Smith-Hurd's Ann. Stats., ch. 98, par. 142 [Jones Ill. Stats. Ann. 89.142]) which provides in substance that where an instrument is paid by a party secondarily liable, it is not discharged but he may strike out his own and subsequent endorsements and again negotiate the instrument, except in cases named, is applicable.

The facts here are unlike those in any of the cases relied on in that the Homans did not convey their interest in the premises. They executed two trust deeds subordinate to the one here foreclosed. Nicholas Nudelman did not convey his one-half interest for a valuable consideration. He transferred it to a member of his family. No grantee of either Homan or Nudelman assumed or agreed to pay this incumbrance, nor was any conveyance made by either of them under circumstances from which such a promise to assume and pay could be applied.

Citing the same cases and in particular *Albers v. Westberg,* 299 Ill. App. 41, plaintiff contends that the acquisition of the note by Nudelman did not discharge it because it appears, as the master found, that it was the intention of the parties as shown by all the circumstances not to extinguish the indebtedness but to keep it alive. That this is the general rule in equity subject to the application of equitable principles is unques-

tioned. We applied it not only in *Albers v. Westberg* but in *Kazunas v. Wright*, 286 Ill. App. 554. We do not question the right of Nicholas Nudelman to subrogation to the rights of the holder of the mortgage in so far as it is necessary to the enforcement of his right of contribution from Homan, his partner and cotenant. Nicholas Nudelman does not ask this or any other relief.

The decree will therefore be reversed and the cause remanded with directions to dismiss the complaint of plaintiff for want of equity.

*Reversed and remanded with directions.*

McSurely, P. J., and O'Connor, J., concur.