(No. 26824.— )
Sarah R. Nudelman, Appellant, vs. Samuel Meyer Haimowitz et al., Appellees.

*Opinion filed January 21, 1943.*

Urion, Bishop & Sladkey, (Jerome J. Sladkey, of counsel,) for appellant.

Gilruth & Beck, for appellees.

· Mr. Justice Smith delivered the opinion of the court:

This case is here on leave to appeal granted by this court to review a judgment of the Appellate Court for the First District. The suit was brought by appellant to foreclose a mortgage on certain property described in the complaint. The evidence was taken before a master. The master recommended a decree for foreclosure in accordance with the prayer of the complaint. The chancellor overruled

exceptions to the master's report and entered a decree in accordance with the finding of the master for foreclosure of the mortgage and sale of the property. By the decree, the amount due was found to be $79,584.76. On appeal, the Appellate Court reversed the decree and remanded the cause with directions to dismiss the complaint for want of equity.

The record shows that for a period of several years, Nicholas Nudelman and appellee Samuel Mayer Haimowitz, (sometimes identified in the record by the pseudonym of "Samuel Homan,") were partners, buying and selling real estate. During the period of the partnership, they bought and sold some $800,000 worth of property.

The property involved in this case was one of the properties acquired by Nudelman and Haimowitz during the period of the partnership. This property was conveyed to them jointly as tenants in common.

On July 8, 1925, they executed a mortgage jointly to Foreman Trust & Savings Bank to secure an indebtedness of $50,000. Each of the mortgagors received one half of the proceeds of this loan. Later $5000 was paid on the mortgage debt. The payment of the balance of $45,000 was extended in 1930 for a period of five years. Thereafter, on March 2, 1931, Haimowitz conveyed his one-half interest in the property to his wife, subject to the mortgage. On December 22, 1932, Mrs. Haimowitz and her husband conveyed this one-half interest to Esther Levy, who was the owner thereof at the time the suit was filed. Neither of these grantees assumed the payment of the mortgage debt. On November 6, 1932, Nudelman conveyed his one-half interest to James Nudelman, his son. On October 19, 1932, Nudelman purchased the $45,000 note from the First National Bank. That bank then owned the note as assignee of Foreman Trust & Savings Bank. Nudelman entered into a contract with the First National Bank at that time to purchase the note for $20,000. At that time there was

due on the note the principal of $45,000 and some accrued interest. This transaction was handled for Nudelman by one Rudolph Salmon, an attorney. The contract was made in the name of Sam Salmon, a brother of Rudolph, for and on behalf of Nudelman. Sam Salmon was also a son-in-law of appellant, Sarah R. Nudelman. The agreement with the bank was that Nudelman would pay $8000 in cash and $12,000 evidenced by an installment note. The installment note was secured by the original $45,000 note, secured by the mortgage, which was hypothecated as collateral for the payment of the new $12,000 note. The $8000 was paid at the time and the note given for $12,000, in accordance with the contract. The new note was signed only by Sam Salmon. He was a shipping clerk employed in a tea house. Apparently he had no part in the transaction except to do what Nudelman and his brother Rudolph, who was Nudelman's attorney, told him. This transaction occurred on October 19, 1932. Thereafter some small payments were made by Nudelman on the $12,000 note. On July 13, 1937, an adjustment of the indebtedness was made, between Nudelman and the bank. A new note was given in settlement of the $12,000 note, on which there was then due $9733.35. At that time the original $45,000 note was surrendered by the bank to Nudelman. The total amount paid by Nudelman for this note was $12,977.76. This was the net cost to him. Thereafter Nudelman assigned the note to Sarah R. Nudelman, his sister-in-law. She testified that she paid him $5000 in cash and gave her note for $7500, making the total cost to her $12,500. The note was transferred to her some seven years after its maturity. She was not, therefore, a holder in due course. This transaction was alleged to have occurred on August 18, 1937. Thereafter, Sarah R. Nudelman, appellant, instituted this suit to foreclose the mortgage on the real estate mortgaged as security for the debt, evidenced by the original note for $45,000.

There is much testimony in the record concerning the acquisition of this $45,000 note by Nudelman from the bank. It is appellant's contention that Nudelman first sought to induce Haimowitz to join with him in the purchase of the note at a discount; that at first Haimowitz indicated some interest in doing this, but later refused to take any part in the purchase of the note, and consented that Nudelman purchase the note on his own account if he was able to make a satisfactory deal with the bank. Their testimony is in hopeless conflict on this as well as the other issues in the case. The substance of the testimony and the facts in detail are fully set out in the opinion of the Appellate Court, (*Nudelman* v. *Haimowitz,* 314 Ill. App. 329,) to which we refer. No good purpose would be served by restating the controverted facts and contentions in detail in this opinion. In this respect, we fully concur in the conclusion reached by the Appellate Court and stated by that court in the following language: "We have no doubt this suit between Sarah Nudelman and Nicholas Nudelman is by design on their part. There are many suspicious circumstances connected with the purchase of the note and their conduct seems to point to this conclusion. We have read plaintiff's testimony carefully. The undisputed facts that she is the sister-in-law of Nicholas Nudelman, that she took the note seven years after it matured, that Nicholas Nudelman seems well content to let plaintiff have a judgment against him and his cotenant for $79,584.76, based on a note purchased from him by plaintiff for $12,500 ($7500 of which was her own note, which has not been paid and on which no interest has been paid,) are only a few of many facts which lead to this conclusion. The deal between these relatives cannot reasonably be explained on any theory other than the desire to obtain an unjust advantage over the Homans for their own benefit."

This conclusion is amply justified and is in accordance with the facts shown by the record. The Appellate Court

correctly applied the law to the facts and we have no doubt but what that court reached a correct conclusion, upon both the facts and the law of the case.

The judgment of the Appellate Court for the First District, reversing the decree of the superior court and remanding the cause with directions to dismiss the complaint, for want of equity, is affirmed. *Judgment affirmed.*