**Michael R. Kazunas, Appellant, v. Sidney B. Wright and June M. Wright, Appellees.**

**Gen. No. 38,870.**

Opinion
filed October 13, 1936.   Rehearing denied October 26, 1936.

JOHN S. HUMMER, of Chicago, for appellant; HUMMER & HUMMER, of counsel.

WINSTON, STRAWN & SHAW, of Chicago, for appellees; WALTER A. WADE and RAYMOND O. MITCHELL, both of Chicago, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In an action at law based upon two promissory notes for the aggregate principal amount of $1,000, with interest from January 1, 1932, and upon trial by the court, there was a finding for the defendants with judgment, from which plaintiff appeals. The notes were executed by Sidney B. Wright and June M. Wright, his wife, July 19, 1926, and payment thereof was secured by a trust deed executed by the Wrights conveying certain real estate in Chicago.

Defendants, by their amended affidavit of merits, admitted that they made and delivered the notes, but interposed as defense a denial that plaintiff was the owner thereof at the time suit was begun. Further, that by reason of certain extension agreements entered into from time to time, beginning July 21, 1927, between the holders of the notes and subsequent grantees of the premises without defendants' knowledge or consent, defendants were released from their obligations to pay the notes to the extent of the value of the property as of July 21, 1927. It was averred that upon that date the value of the premises was sufficient to satisfy the indebtedness in full, and therefore nothing whatever was due. By a second amended affidavit of merits the defendants also interposed the defense of payment.

There is no substantial conflict as to the facts. July 19, 1926, defendants Wrights purchased the real estate in question from Myrtle Rooms and delivered these two notes as part of the purchase price. One of the notes was for $700, the other for $300. Each was

drawn to the order of "Ourselves" and indorsed by the makers. The notes provided that the indebtedness should draw interest at the rate of six per cent, payable semiannually. The note for $700 by its terms fell due one year from date, and the $300 note in two years from date.

To secure these notes defendants executed and delivered to Myrtle Rooms a trust deed conveying the premises purchased. On February 1, 1927, the Wrights by warranty deed conveyed the premises to Arthur Anderson, subject to the indebtedness. On March 1, 1927, Anderson, a bachelor, conveyed the premises by warranty deed to Catherine Sullivan, a widow, subject to the indebtedness. July 19, 1927, an extension agreement in writing was entered into between Albert H. Johnson, then the owner of the notes, and Catherine Sullivan, by which the time of payment of the $700 note was extended for a year from its maturity, and on July 19, 1928, by a similar agreement, the time of payment of the $300 note was extended for one year. December 27, 1929, Catherine Sullivan, by warranty deed, conveyed the premises to A. Lambert Hennessy. July 1, 1930, Hennessy, by written agreement with Hugh W. Fluck, Jr., extended payment of the indebtedness due on both notes from July 1, 1930, for a period of one and one-half years. July 15, 1931, Hennessy and his wife, by quitclaim deed, conveyed the premises to Charles Farrell, and on April 19, 1932, Fluck, by letter to Hennessy, extended the time of payment of the indebtedness for one year. Neither by the conveyance in question nor by other proof did defendants attempt to show that any of the respective grantees assumed or agreed to pay the indebtedness, and there was uncontradicted testimony tending to show that neither one of the defendants had knowledge of or at any time consented to the execution of these extension agreements.

When the first note came due, July 18, 1928, Myrtle Rooms served notice in writing on the makers, the Wrights, that she had elected to declare the whole indebtedness due and payable. Defendants conferred with a broker, Mr. Cramer. Catherine Sullivan was then the owner of the premises. About July 19, 1927, Cramer prepared the written agreement between Albert H. Johnson, who in the transaction became the holder of the notes, and Catherine Sullivan, the owner of the premises, whereby it was agreed that the time of payment of the $700 note should be extended to July 19, 1928. In behalf of Catherine Sullivan, Cramer negotiated a loan of $1,034.65 at the Cottage Grove State Bank, the proceeds of which were used to purchase the notes from Myrtle Rooms. Johnson was cashier of the Cottage Grove State Bank, and the notes and trust deed were delivered to the bank uncanceled. Hugh W. Fluck, Jr., acquired the notes from the bank and thereafter delivered the same to Charles Farrell, who was the owner on November 23, 1934. On that date Farrell took the notes and handed them to Michael Kazunas, the plaintiff, who was a clerk in the office of the attorneys. He filed his action at law on the notes on January 1, 1935.

Evidence was offered by the defendants tending to show that on July 19, 1927, the value of the real estate conveyed by the trust deed was about $4,000, and that on November 28, 1934, when demand was made on defendants to pay the notes, the value was not more than $600, while there were liens for taxes and special assessments against the property aggregating $1,047.99. Catherine Sullivan paid the interest and $50 in consideration of the extension agreement of July 19, 1927. Charles F. Farrell is the owner of the equity in the premises and also the beneficial owner of the notes sued on.

Two of the alleged defenses set up by the defendants may, we think, be disposed of without much consideration. We hold that under the law plaintiff can maintain this suit although the beneficial ownership of the notes is in another person. This is settled by the provisions of the Negotiable Instruments Act; see Illinois State Bar Stats. 1935, ch. 98, ¶ 71; and by repeated decisions of the Appellate and Supreme Courts. *Caldwell v. Lawrence,* 84 Ill. 161; *Bourke v. Hefter,* 202 Ill. 321; *Dillon v. Elmore,* 361 Ill. 356; *Ewen v. Templeton,* 148 Ill. App. 46.

We hold also that the defense of payment is not sustained by the evidence. The transaction in which Myrtle Rooms, Catherine Sullivan, Cramer, and the Cottage Grove State Bank and its cashier, Johnson, participated did not amount to payment of the notes for the reason that such manifestly was not the intention of the parties to the transaction. This is indicated by the written evidence, by the fact that the notes were delivered uncanceled, and by all the circumstances which distinguish that arrangement.

The controlling question in the case, therefore, is whether the various agreements between the grantee owners of the equity and the holders of the notes whereby the time of payment of the same was extended without the knowledge or consent of the makers, who were mortgagors, operated to release these mortgagor makers from their liability on the notes. The plaintiff says that the release of the mortgagors is entirely dependent upon the fact of the assumption of the mortgage debt by the grantee, and because the grantee did not assume and agree to pay the debt the mortgagors are not released. He cites Illinois cases, of which *Prudential Ins. Co. v. Bass,* 357 Ill. 72, is illustrative, and Pomeroy's Equity Jurisprudence (4th ed., vol. 3, sec. 1206), where the author in substance states the law to be that *where the grantee assumes and agrees to pay*

*the mortgage debt as a part of the purchase price,* he becomes personally liable for the debt, and the land becomes the primary fund for the payment of the debt, and that ''as between the mortgagor and the grantee, the grantee becomes the principal debtor, primarily liable for the debt, and the mortgagor becomes the surety, with all the consequences flowing from the relation of suretyship.'' The theory of the author seems to be that these far reaching results arise solely out of the fact of the assumption of the mortgage debt by the grantee. That this theory prevails in the law of this State plaintiff cites cases such as *Scholten v. Barber,* 217 Ill. 148; *Albee v. Gross,* 250 Ill. App. 98; *Douglass v. Ullsperger,* 251 Ill. App. 145; *Binga v. Bell,* 259 Ill. App. 361, and other cases.

We will allow the plaintiff to state his contention in his own words; he says:

''The principal-surety relation arises only because of the assumption of the indebtedness by the grantee, and it is a corollary of the above proposition that if there is no assumption of the indebtedness of his grantee the mortgagor does not become a surety, and an extension of time of payment without his consent does not release him. Such indeed is the rule of Illinois.''

Plaintiff says *Scholten v. Barber,* 217 Ill. 148, is identical with the instant case. In that case Mary Scholten executed her promissory note to George N. Cooper and secured the same by a trust deed. She afterward conveyed the property to one Dexter who assumed and agreed to pay the indebtedness. The note was transferred by Cooper to the plaintiff, Barber. There were several conveyances of the property by quitclaim deed, but in none of these did the grantee assume the debt, and one Millam became the owner of the premises. By agreement between Millam and the owner of the note, the time of payment was extended

for three years. Subsequently the trust deed was foreclosed, the proceeds of the sale indorsed on the principal note, and Barber, as holder of the note, sued Mary A. Scholten for the balance claimed to be due. The defendant pleaded a release because of the extension: In the trial court plaintiff had judgment, which was affirmed by the Appellate Court, and Mrs. Scholten appealed to the Supreme Court. The opinion of that court, after stating the general rule where a grantee assumed and agreed to pay, said in substance that the mortgagee was in nowise affected by the agreement to which he was not a party; might disregard it and bring his action against the original debtor only, or accept the promise made for his benefit, and bring his action against the grantee. The court further said:

"There was no agreement by Millam to pay the amount of the encumbrance when the endorsement was made on the note or at any other time. . . . Plaintiff could not have maintained an action against Millam for the amount of such note, and as he never assumed or agreed to pay it, the defendant never became and could not become his surety."

The plaintiff argues that the court's holding that the mortgagor was not released was based upon the proposition here contended for—"that the release does not operate unless the mortgagor becomes a surety by reason of the assumption of the indebtedness by the grantee."

Similar cases from other jurisdictions, such as *Shepherd v. May,* 115 U. S. 505; *Chilton v. Brooks et al.,* 72 Md. 554, are cited.

In *Douglass v. Ullsperger,* 251 Ill. App. 145, this court pointed out the conflicting opinions which exist as to the law on this subject, as illustrated by the cases of *Morganroth v. Pink,* 227 Ill. App. 244, and *Albee v. Gross,* 250 Ill. App. 98. The latter case reviews the decisions at length, and the subject is discussed with

particular reference to the Illinois cases in Reeves on the Illinois Law of Mortgages and Foreclosures, vol. 1, ch. 15, page 366, in an extended footnote. The same subject is considered in the annotation to *Insley v. Webb,* 41 A. L. R. 274, 294, and a similar annotation to *Peters v. Lindley* in the same volume, at page 315.

The argument of plaintiff assumes as a premise that the relationship of principle and surety as between grantee and mortgagor arises out of the contract, by which the grantee assumes and agrees to pay. As a matter of fact, there is no such contract where the vendee only accepts the conveyance subject to the mortgage. Therefore, plaintiff argues, the relationship of principal and surety does not arise in the absence of the contract to assume and pay. The vice in the argument is that plaintiff's major premise assumes that the relationship of principal and surety cannot arise in any other way than by the voluntary contract of the parties, by which the vendee assumes and agrees to pay. This assumes the whole issue. In the first place the relationship said to arise between the vendee and the mortgagor in their relation to the creditor is not, strictly speaking, that of principal and surety at all. The relationship does not come into existence as the intended result of an agreement. It is presumed to exist and it exists only by implication of law and for the furtherance of justice. It is not the result of a true contract. The relationship implied is not that of a true surety. It arises out of *quasi* contract, and *quasi* contract (see Restatement, vol. 1, sec. 5) is "an obligation created by law for reasons of justice." At common law such obligations (as the Restatement points out) were only enforced by the common law form of action known as assumpsit. Hence, much confusion resulted.

The real question then here comes to this, namely, whether in case of conveyance by the mortgagor without any agreement on the part of the grantee to as-

sume and pay the mortgage obligation, and the execution thereafter by the creditor and the grantee of a valid agreement extending the time of payment of the indebtedness without the knowledge of the mortgagor and without his consent constitutes such a wrong to the mortgagor as in law and justice would require his release from the original obligation. The answer must, we think, be in the affirmative. In *Murray v. Marshall,* 94 N. Y. 611, the court said that while no strict and technical relation of principal and surety arose, an equity did arise, bearing a very close resemblance to the equitable right of a surety whose contract had been modified; that it was not inaccurate to say that the grantee, with respect to the land and to the extent of its value, stood in the relation of a principal debtor, and to the same extent the grantor had the equities of a surety; that this ''follows inevitably from the right of subrogation which inheres in the original contract of sale and conveyance. . . . Through the right of subrogation the vendor could secure his safety and that right could not be invaded with impunity. It was invaded. When the creditor extended the time of payment by a valid agreement with the grantee, he at once, for the time being, took away the vendor's original right of subrogation. He suspended its operation beyond the terms of the mortgage. He put upon the mortgagor a new risk not contemplated, and never consented to. The value of the land, and so the amount to go in exoneration of the bond, might prove to be very much less at the end of the extended period than at the original maturity of the debt, and the latter might be increased by an accumulation of interest. The creditor had no right thus to modify or destroy the original right of subrogation. What he did was a conscious violation of this right, for the fact that he dealt with the grantee for an extension of the mortgage shows that he knew of the conveyance, and that it left the land bound in

the hands of the grantee. Knowing this he is chargeable with knowledge of the mortgagor's equitable rights, and meddled with them at his peril. . . . The extension of time, therefore, operated to discharge him only to the extent of that value. At the moment of the extension his right of subrogation was taken away, and at that moment he was discharged to the extent of the value of the land, since the extension barred his recourse to it, and once discharged he could not again be made liable. From that moment the risk of future depreciation fell upon the creditor who by the extension practically took the land as his sole security to the extent of its then value, and assumed the risk of getting that value out of it in the future.''

*Mutual Benefit Life Ins. Co. v. Lindley,* 97 Ind. App. 578, 183 N. E. 127; *Citizens State Bank v. Peters,* 179 Minn. 330, 229 N. W. 129; and *Zastrow v. Knight,* 56 S. D. 554, 229 N. W. 925, are only a few of the many well considered cases where this rule has been applied.

In the annotation to 41 A. L. R., page 294, the author states the rule supported by the weight of authority to be ''that where the grantee of the mortgaged property does not assume the mortgage, but merely takes subject thereto, the grantor occupies, to the extent of the value of the land, the position of, and is entitled to the same rights as, a surety; and so where the holder of the mortgage has, by a valid contract with the owner of the equity of redemption, without the consent of the grantor, postponed the time for its payment beyond the time therein provided, the effect of such agreement is not altogether to discharge the grantor from liability, as in the case where the grantee has assumed a personal liability, but to the extent of the value of the mortgaged property at the time of the extension.''

So far as the briefs disclose, the precise question arising here has never been decided by the Supreme

or Appellate Courts of this State. The rule and the reasons for it, however, are well stated in *In re Roth,* 272 Fed. 516, which has been quoted with approval by the Appellate Court of the Third District in *Albee v. Gross,* 250 Ill. App. 98, and by this court in *Metz v. Dionne,* 250 Ill. App. 369. It may be conceded this theory is inconsistent with language used in *Scholten v. Barber,* 217 Ill. 148. But this particular defense was not presented by the pleadings in that case, nor until now, so far as we are informed by the briefs, has it ever been presented in any case reviewed by the Appellate or Supreme Court. Clearly, the courts cannot be held to have decided a question not presented on the pleadings or in the briefs. We have not attempted to harmonize the language in opinions of the courts. Indeed, it may be impossible to do so. However, it is believed the conclusion at which we have arrived is not inconsistent with the law as heretofore stated. We hold that by these extensions the mortgagors were injured and are released to the extent of such injury; that the finding and judgment for the defendant was proper. The judgment is therefore affirmed.

*Affirmed.*

O'Connor and McSurely, JJ., specially concurring: We agree with the law as stated in the foregoing opinion. And although, as stated in the opinion, the point was not made that the grantees of the premises did not assume the mortgage debt, yet it appears from the extension agreements entered into between Albert H. Johnson and Catherine Sullivan, one dated July 19, 1927, and the other dated July 19, 1928, and an extension agreement entered into between Hugh W. Fluck, Jr. and A. Lambert Hennessy, dated July 1, 1930, that Catherine Sullivan, one of the grantees of the mortgaged premises, and later A. Lambert Hennessy, another grantee of the mortgaged premises, each agreed

to pay the mortgage indebtedness and interest thereon in consideration of the extension of the time of payment of the indebtedness. By the extension agreements the grantees became personally liable to pay the mortgage debt, just as much so as though they had assumed it in the warranty deeds conveying the premises to them respectively.