Edward M. Kroer, Appellee, v. Charles Smith, Appellant.

Gen. No. 42,329.

Opinion filed April 20, 1943.

George A. Bosomburg, of Chicago, for appellant.

Ditchburne & Lounsbury, of Chicago, for appellee; Nicholas J. Bohling and Carl L. Steiner, both of Chicago, of counsel.

Mr. Justice Friend delivered the opinion of the court.

July 23, 1927, defendant, Charles Smith, executed a promissory note for $1,800, payable to Emma Kroer of Hammond, Indiana, on or before two years after date, bearing interest at the rate of 7 per cent, and providing for attorneys' fees. Mrs. Kroer died in 1934, leaving a will which was probated both in Lake county, Indiana, and Cook county, Illinois. The note was not listed among the assets of the estate in either jurisdiction. February 14, 1941, her son, Edward M. Kroer, claiming to be the legal holder and owner of the note, had judgment thereon by default in the circuit court of Cook county for $3,149.65, which included interest and attorneys' fees. December 5, 1941, defendant had leave to defend, and when the cause was heard on its merits January 16, 1942, the court reaffirmed the judgment of February 14, 1941, from which defendant has taken an appeal.

Three principal defenses are interposed. It is first urged that the undisputed testimony and manifest weight of the evidence disclose that the debt evidenced by the note was settled between defendant and the payee, Emma Kroer, during her lifetime. Defendant was engaged in the real estate and insurance business in Hammond, and over a course of years carried on various business transactions for and with deceased, as indicated by several exhibits, including accounts and contracts with and correspondence between him and Mrs. Kroer. He testified that early in September 1931 he had a conversation with deceased at his office in Hammond in the presence of Fred Hacker, an office

associate who was also engaged in the insurance business, pertaining to the settlement of their accounts, which showed an indebtedness due defendant; that "We settled everything at that time. . . . According to the agreement she was to pay me $2,000. . . . She owed around $1,700 on the contract. . . ."; that the settlement included his liability on the note, which Mrs. Kroer then promised to cancel and surrender; that she repeatedly told him she had lost or misplaced the note but assured him she would return it as soon as it was found. This evidence was corroborated by Hacker, who testified that he knew Mrs. Kroer and was present about September 1, 1931, when she came into the office to see defendant. "The first thing he asked her in my presence, did you bring that note for $1,800 marked paid that we agreed on, and she said, 'Mr. Smith you and I have had a lot of business dealings and don't worry about the note. I can't find it' "; the defendant thereupon reminded her that she had promised to bring it and she replied, "I will, just as soon as I can find it." As heretofore stated, the note was payable to Emma Kroer and bore no indorsement. It appears from the evidence that plaintiff found the note in a book in 1939 shortly before his suit was filed, a circumstance which lends support to the conversation testified to by defendant and Hacker that Mrs. Kroer had lost or misplaced the note and assigned that as her reason for not canceling and returning it to defendant. Plaintiff did not testify upon the hearing, and the foregoing evidence stands undisputed. Upon trial defendant's counsel called the court's attention to the fact that the note had not been inventoried among the assets of the estate in either jurisdiction, and although this fact was not adduced in evidence, there was no denial thereof when the statement was made. Under the circumstances we are of opinion that the finding and judgment of the court are contrary to the manifest weight of the evidence.

It is next urged that plaintiff cannot recover on the promissory note payable to deceased, without proving that he is the owner thereof. Although he alleges ownership in his complaint, there is no evidence in the record that plaintiff has any title to the note or any right to sue thereon, except that he found it in a book shortly before suit was instituted and long after his mother's death. The law is well settled in this State that although negotiable instruments may be the subject of a valid gift without indorsement or written assignment by the payee if delivered to the donee by the payee with intent to transfer title, nevertheless "the burden of proof of the gift is on the donee to prove all facts essential to a valid gift, and these facts include the delivery by the donor to the donee with intent to pass the title." *Collins v. Ogden,* 323 Ill. 594. In that case the court cited and referred to *Rothwell v. Taylor,* 303 Ill. 226, which involved the gift of negotiable instruments without indorsement or written assignment by the payee to her niece, and the court held that although the niece had possession of the notes and certificates before the payee's death and claimed to own them, such proof did not meet the requirements of the law to pass title. In the *Collins* case the court quoted from *Porter v. Cushman,* 19 Ill. 572, as follows: " 'If it [the negotiable paper] is found in the hands of a stranger without such legal transfer, the presumption is that it has been lost or purloined or otherwise improperly got into circulation' ''; and went on to cite later Illinois cases as additional authority for the rule that "the legal holder of a note, alone, can maintain an action on it." In proceedings of that character it is essential to the plaintiff's right to recover to show that at the commencement of the suit he had the legal title to the negotiable instrument, and the mere possession thereof, payable to order and not indorsed by the payee, is not, alone, evidence of title, either legal or equitable, in the possessor, but the

burden is on the possessor to prove his equitable title by showing a delivery to him with intent to pass title. *Collins v. Ogden, supra; Elvin v. Wuchetich,* 326 Ill. 285. Since defendant's answer denied plaintiff's ownership and his right to sue on the note, it was plaintiff's duty to prove ownership thereof. This he failed to do, and therefore he cannot recover on it.

It is urged by plaintiff, however, that he proved himself to be the legal holder of the note when he recovered the original judgment before it was opened for the purpose of giving Smith leave to defend. This contention is predicated upon *Dulle v. Lally,* 167 Ill. 485, wherein, after the lapse of many terms of court, defendant was given leave to plead, "the judgment to stand." He did plead in pursuance of the order, and upon trial the issue was found against him. The *Dulle* case is not authority for the contention that a judgment, under such an order as was entered in that case, can be treated as *res adjudicata* or estoppel by verdict; the court merely held that "Neither this motion, nor any showing made, nor any ruling of the court in respect thereto, appears in the bill of exceptions. . . . In this state of the record the previous errors of the court, if any there were, were waived, and appellant can take no advantage by now assigning them here." Moreover, the order entered in the *Dulle* case was unlike that in the case at bar, where the judgment was ordered to stand *as security.* Under such circumstances the courts have consistently held that the order destroys the judgment for all purposes except as security. In *First Nat. Bank of Palatine v. Hahnemann Institutions of Chicago, Inc.,* 356 Ill. 366, where the order provided that the judgment order stand as security until the further order of the court, it was held that "Upon the entry of such an order, the judgment exists only for that purpose." In the early case of *Borchsenius v. Canutson,* 100 Ill. 82, the following quotation from the opinion indicates that this view

was adopted as early as 1881: "Were the judgment which was entered on the *cognovit* still subsisting, it is easily understood how there would be an estoppel; but as that judgment has been opened, and the defendant admitted to plead, it is not perceived what there is of estoppel in the case. The judgment is to be looked upon as if it were not. The right given to plead is general, with no restriction whatever, and we do not see that the case stands differently in this respect from what it would if the suit were one in the form of an ordinary action upon the note by summons." In *Morris v. Taylor,* 199 Ill. App. 588, the court required defendant to take the initiative and introduce his defense first, before plaintiffs were put to their proofs. This was held to be erroneous procedure, the court saying: "When defendant was let in to plead, the case stood for trial upon the pleadings, which cast upon the plaintiffs the burden of proving their case under the law in the same way they would have been compelled to do had there been no judgment entered by confession." The law of Indiana is to the same effect. *Dougherty v. Wise,* 25 Ind. App. 398.

As an additional defense it is urged that plaintiff's suit and the judgment are founded on a void instrument. This contention is predicated upon the fact that the note sued on was payable in Indiana, and therefore its validity must be determined by the laws of that State, which has a statute known as the Indiana Intangibles Tax Act providing that unless the intangibles tax is paid and a tax stamp is affixed every year on promissory notes and other intangibles, such notes "shall be null and void"; and it is argued that since the promissory note in question has no tax stamp attached, the instrument is void. Counsel for the respective parties place different interpretations on the statute as construed by various decisions, but in view of our conclusion that the other defenses interposed

are valid and bar recovery, we consider it unnecessary to discuss this question.

For the reasons indicated we are of opinion that the judgment of the circuit court was erroneously entered, and it is therefore reversed. .

*Judgment reversed.*

SULLIVAN, P. J., and SCANLAN, J., concur.