DAVID H. LOCKS, Plaintiff-Appellant, *v.* NORTH TOWNE NATIONAL BANK OF ROCKFORD, Defendant-Appellee.

Second District   No. 82—613

Opinion filed June 21, 1983.

David H. Locks, of Chicago, for appellant, *pro se.*

Stephen T. Moore, of Thomas, Thomas, Keeling & Moore, of Rockford, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, David H. Locks, appeals from the judgment of the circuit court of Winnebago County in favor of defendant North Towne National Bank of Rockford (North Towne). Locks seeks payment by North Towne on a cashier's check which it issued and later dishonored. Because Locks has no standing to bring an action to recover on the cashier's check, we affirm.

The material facts of this case were either stipulated or uncontradicted. Locks, an attorney, represented Patrick Newell, the purchaser in a real estate transaction. Thorsen Realtors (Thorsen) was the real estate broker for this transaction, having been retained by the seller, and was to act as escrowee for the purposes of receipt and distribution of an earnest money deposit concerning the property.

Newell had an agreement with Gail Russie, whereby Russie was to advance a portion of the $8,500 earnest money deposit that Newell was required to transmit to Thorsen pursuant to the real estate sales contract. On December 16, 1977, Russie negotiated to North Towne a check for $4,250 drawn on the account of "Russie's Floor Maintenance & Supplies, Inc." at the DeKalb Bank. In exchange for the Russie check, North Towne issued its own cashier's check in the amount of $4,250 payable to Thorsen. Thereafter, the cashier's check found its way into the hands of Newell who personally delivered it to Thorsen. Thorsen deposited the cashier's check into its escrow account at First Security Bank of Oak Brook, a trial defendant not a party on this appeal.

Subsequently, the DeKalb Bank dishonored the Russie check used to purchase the cashier's check, and North Towne discovered a large overdraft in Russie's account with it. North Towne informed Thorsen of its decision to stop payment on the cashier's check on December 23, 1977, prior to the closing date of the real estate transaction, and dishonored the cashier's check upon presentment. Newell then raised other funds to satisfy his earnest money obligation.

As a result of a debt Newell owed to Locks for previously rendered legal services, Newell assigned all interest, legal or equitable, that he had in the cashier's check to Locks. Locks, as assignee of Newell, instituted this action to recover payment on the cashier's check. Although Thorsen was originally named as one defendant, it was dismissed by stipulation of the parties at the start of trial. After a bench trial, the circuit court entered its judgment of July 9, 1982, in favor of defendants.

On appeal, Locks raises two issues: (1) whether he has standing to sue North Towne for recovery on the dishonored cashier's check; and

(2) whether North Towne improperly dishonored the cashier's check.

Locks claims standing to sue as a holder, but not as a holder in due course. Any interest he may have is derived from Newell's, as the assignment shows and the trial court found. Locks argues that Newell was the beneficial owner of the instrument and that Thorsen, the payee, acted merely as "technical holder" for Newell's benefit. Furthermore, Locks argues that Thorsen surrendered the instrument to him at trial where Locks produced it as an exhibit, this act rendering Locks the transferee of the holder with the rights that were vested in the transferor.

■■ Section 3—301 of the Uniform Commercial Code (UCC), under which Locks claims recovery from North Towne, provides that "[t]he holder of an instrument whether or not he is the owner may *** enforce payment in his own name." (Ill. Rev. Stat. 1977, ch. 26, par. 3—301.) Thus, only the *holder* of the instrument has standing in an action under this section. A "holder" is defined as a person in possession of an instrument drawn, issued or indorsed to him or to his order or to bearer or in blank. (Ill. Rev. Stat. 1977, ch. 26 par. 1—201(20).) Thus, proof of possession is essential for standing to enforce payment on an instrument. *Burritt Mutual Savings Bank v. Transamerica Insurance Co.* (1980), 180 Conn. 71, 428 A.2d 333; *Rex Smith Propane, Inc. v. National Bank of Commerce* (N.D. Tex. 1974), 372 F. Supp. 499.

■■ Locks neither alleged nor proved physical possession of the cashier's check. Each version of Locks' complaint, including the second amended complaint under which this cause was tried, alleged that Thorsen "holds and owns" the cashier's check, albeit for the benefit of Newell. We regard this as an admission by Locks in his pleadings and, therefore, proper evidence that Thorsen, not Newell or Locks, was the possessor of the instrument at the time the complaint was filed. (See *Mooney v. Underwriters at Lloyd's, London* (1965), 33 Ill. 2d 566; *Walorf v. Marlas* (1977), 56 Ill. App. 3d 358, 371 N.E.2d 1021.) Locks presented no evidence at trial of his or Newell's physical possession. The cashier's check itself was introduced into evidence as a stipulated exhibit.

■■ The thrust of Lock's argument is that he has standing as the assignee of the beneficial owner (Newell) of the instrument. He cites no authority, however, for the proposition that a beneficial owner can sue to recover on an instrument where the legal holder does not sue. To the contrary, Illinois cases prior to the adoption of the UCC point to the opposite conclusion. It was held that a legal holder alone can maintain an action on instrument. (*Kroer v. Smith* (1943), 318 Ill.

App. 489, 48 N.E.2d 743; *Williams v. Estate of Frederick* (1937), 289 Ill. App. 410, 7 N.E.2d 384.) While a holder with no beneficial interest in an instrument could maintain a suit upon it (*Joslyn v. Joslyn* (1944), 386 Ill. 387; *Kazunas v. Wright* (1936), 286 Ill. App. 554, 4 N.E.2d 118), our research uncovers no case permitting the owner of solely the beneficial interest to sue. The section of the UCC authorizing enforcement of payment on an instrument by a holder does not attempt to change the law in this regard. (Ill. Rev. Stat. 1977, ch. 26, par. 3—301; see Ill. Ann. Stat., ch. 26, par. 3—301, Illinois Code Comment and Uniform Commercial Code Comment, at 124-25 (Smith-Hurd 1963).) We hold that Newell's position as beneficial owner of the cashier's check, even if it were established at trial, considered alone, is insufficient to confer standing upon him to enforce payment of that instrument.

We note that some jurisdictions have recognized that a principal's constructive possession through his agent's physical possession may render the principal a holder of commercial paper. (See, *e.g.,* *Billingsley v. Kelly* (1971), 261 Md. 116, 274 A.2d 113; *Lazidis v. Goidl* (Tex. Civ. App. 1978), 564 S.W.2d 453; see also *Investment Service Co. v. Martin Bros. Container & Timber Products Corp.* (1970), 255 Ore. 192, 465 P.2d 868, suggesting that whether constructive possession is sufficient under the UCC is questionable.) One Illinois case might be read to permit constructive possession as sufficient for holder status. (*Schranz v. I. L. Grossman, Inc.* (1980), 90 Ill. App. 3d 507, 412 N.E.2d 1378, which found delivery to the plaintiffs in the · placing of the instrument in escrow where neither plaintiffs nor the previous holder could retrieve it until the happening of a certain event.) We need not address whether that concept is applicable here because Locks has not argued that theory (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379); nor was an agency relationship between Newell and Thorsen proved at trial. At opening argument, Locks stated that, "Thorsen was acting as agent of the seller [of the real estate Newell was purchasing]." During his testimony, Locks stated that Thorsen "was acting as broker having been retained by the seller." The depository of an escrow is a special and not a general agent, and his powers are limited to the conditions of the deposit. (*Ortman v. Kane* (1945), 389 Ill. 613; *Chicago Title & Trust Co. v. Walsh* (1975), 34 Ill. App. 3d 458, 340 N.E.2d 106.) Since the escrow agreement in this case or its provisions were not produced at trial, it could not be determined whether Thorsen's possession of the cashier's check after it had been dishonored and after the real estate transaction had been closed was pursuant to an agency relationship with Ne-

well.

Since Newell was not the holder of the cashier's check, his assignment to Locks could not have given Locks standing to enforce payment on the instrument. Locks also maintains, however, that he has standing as Thorsen's transferee. The UCC provides that a transfer of an instrument vests in the transferee such rights as the transferor has. (Ill. Rev. Stat. 1977, ch. 26, par. 3—201.) Transfer of an instrument in such form that the transferee becomes a holder is a "negotiation," and negotiation always requires delivery. (Ill. Rev. Stat. 1977, ch. 26, par. 3—202.) "Delivery" with respect to an instrument means the voluntary transfer of possession. Ill. Rev. Stat. 1977, ch. 26, par. 1—201(14).

■ Locks argues that a transfer took place at trial when the cashier's check was admitted into evidence as an exhibit stipulated to by the parties. He asserts that he produced the instrument at trial after Thorsen surrendered it to him in exchange for dismissal of Thorsen as a defendant. However, the record only shows that the instrument was introduced as a stipulated exhibit and does not reveal the reason for Thorsen's dismissal. No other evidence of a delivery to Locks is suggested. We cannot see how the introduction of the instrument as an exhibit by all parties with the non-party-holder's apparent acquiescence would constitute delivery, negotiation, or transfer to Locks.

■ Moreover, a plaintiff's legal interest to sue upon an instrument must be shown as of the commencement of the suit. (*Kroer v. Smith* (1943), 318 Ill. App. 489, 48 N.E.2d 743; *Investment Service Co. v. Martin Bros. Container & Timber Products Corp.* (1970), 255 Ore. 192, 465 P.2d 868.) Transfer at the time of trial, even if it had taken place, came too late and the complaint was never amended to reflect that now-alleged transfer.

We conclude that Locks did not have an interest in the cashier's check such as to give him standing to bring a suit to enforce it. Because of this conclusion, we need not address the issue of the propriety of North Towne's dishonoring of the instrument. Accordingly, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

SEIDENFELD, P.J., and HOPF, J., concur.