In the

# United States Court of Appeals
### For the Seventh Circuit

No. 08-2153

PATRICK L. COGSWELL and PATRICK M. O'FLAHERTY,
doing business as THE PATRICK GROUP,

*Plaintiffs-Appellants,*

*v.*

CITIFINANCIAL MORTGAGE COMPANY, INCORPORATED,
successor by merger to Associates Finance, Incorporated,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:05-cv-05008—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED APRIL 15, 2009—DECIDED OCTOBER 5, 2010

Before FLAUM, RIPPLE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* CitiFinancial Mortgage assigned its interest in a mortgage to two investors—doing business as "The Patrick Group"—but never delivered the original or a copy of the underlying note. When The Patrick Group tried to foreclose on the mortgage in

Illinois state court, its action was dismissed because it could not produce the note. After an unsuccessful appeal, The Patrick Group filed this breach-of-contract lawsuit against CitiFinancial. The suit was removed to federal court, and the district court granted summary judgment in favor of CitiFinancial.

We reverse. The district court based its summary-judgment decision primarily on a determination that CitiFinancial never agreed to deliver the note as part of the parties' agreement to transfer the mortgage. But whether they agreed on this term is a question of fact, and The Patrick Group presented enough evidence from which a reasonable fact finder could conclude that it was a part of the parties' agreement. The district court's alternative basis for summary judgment—that CitiFinancial's alleged breach did not cause The Patrick Group's damages—was also erroneous. Under the circumstances of this case, the causation question should have been resolved in The Patrick Group's favor as a matter of law; the state trial and appellate courts rejected The Patrick Group's foreclosure action because without a copy of the note, it could not prove it was the holder of the debt the mortgage secured.

## I. Background

In November 2000 CitiFinancial initiated proceedings in state court to foreclose on a mortgage secured by

residential property in Illinois.[1] Around the same time, Patrick Cogswell and Patrick O'Flaherty, who at the time were doing business as The Patrick Group, approached CitiFinancial and offered to purchase the mortgage and the underlying note. The parties settled on a purchase price of $140,000, and in January 2001 CitiFinancial assigned its interest in the mortgage and the note to The Patrick Group. The original note and mortgage could not be located, however, and while CitiFinancial was able to give The Patrick Group a copy of the mortgage, it did not have a copy of the note.

After the assignment, The Patrick Group stepped into CitiFinancial's shoes in the foreclosure proceeding but quickly ran into problems. The current owners of the property had not discovered CitiFinancial's mortgage lien in their title search, and further inquiry revealed a gap in the recorded ownership of the mortgage. The original mortgagee, Equity Mortgage, assigned the mortgage to Fleet Finance, but the next recorded assignments were from Home Equity to CitiFinancial and from CitiFinancial to The Patrick Group; nothing in the record indicated how Home Equity acquired the mortgage from Fleet Finance. Since The Patrick Group could not produce either an original or a copy of the underlying

---

[1] At the time of the mortgage transaction at issue in this case, Associates Finance actually owned the mortgage. By the time the complaint was filed in this action, however, Associates Finance had merged with CitiFinancial Mortgage. For the sake of simplicity, we refer to Associates Finance and CitiFinancial Mortgage as "CitiFinancial."

note, the property owners contended that The Patrick Group was not a mortgagee entitled to foreclose upon the property within the meaning of 735 ILL. COMP. STAT. 5/15-1208.

The Patrick Group introduced testimony and CitiFinancial's computer records at trial in an effort to prove it was entitled to enforce the note, but the state trial court sided with the property owners and entered a directed verdict against The Patrick Group. The Illinois Appellate Court affirmed. The appellate court observed that under Illinois law only the holder of a note may foreclose on property; transferring a mortgage is not enough by itself to confer the right to foreclose upon property. *See, e.g.*, *Moore v. Lewis*, 366 N.E.2d 594, 599 (Ill. App. Ct. 1977). The court concluded that The Patrick Group had not proved it was a noteholder because it never received the note from CitiFinancial or otherwise possessed it and therefore was not entitled to foreclose upon the mortgage.

Frustrated that it paid $140,000 to purchase an unenforceable mortgage, The Patrick Group filed this breach-of-contract action in state court against CitiFinancial. CitiFinancial removed the case to federal court based on diversity jurisdiction. Both parties moved for summary judgment, and the district court granted CitiFinancial's motion. The court first concluded that The Patrick Group had not proven that the parties' agreement required CitiFinancial to transfer the original or a copy of the note. The court also concluded that even if CitiFinancial was obligated to turn over a copy of the note, its failure

to do so did not cause The Patrick Group's damages. This conclusion was based on the court's view that Illinois law permitted The Patrick Group to foreclose on the mortgage even if it did not hold the note. The court entered judgment for CitiFinancial, and this appeal followed.

## II. Discussion

We review the district court's decision to grant summary judgement de novo. When the district court decides cross-motions for summary judgment, as it did here, "we construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made," which in this case is The Patrick Group. *First State Bank of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 567 (7th Cir. 2009) (internal quotation marks and citation omitted). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The parties agree that Illinois law governs this action. In Illinois, as elsewhere, a breach-of-contract claim requires: (1) an offer and acceptance; (2) consideration; (3) definite and certain terms; (4) performance by the plaintiff of all required conditions; (5) breach; and (6) damages caused by the breach. *E.g.*, *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007) (citation omitted); *Barille v. Sears Roebuck & Co.*, 682 N.E.2d 118, 121 (Ill. App. Ct. 1997). Only the third and sixth elements are at issue in this appeal. More specif-

ically, the first question is whether the parties' agreement required CitiFinancial to deliver the original or a copy of the note secured by the mortgage when it sold the mortgage to The Patrick Group. The second question is whether CitiFinancial's failure to deliver an original or a copy of the note caused The Patrick Group's foreclosure action to fail.

## A. The Terms of the Contract

The Patrick Group maintains that the parties agreed CitiFinancial would deliver the note when it transferred the mortgage. The district court treated this issue as a question of law, drawing on language from our cases stating that "'[t]he question of the existence of a contract is a matter of law for determination by the court.'" *Caremark*, 493 F.3d at 849 (quoting *Arneson v. Bd. of Trs., McKendree Coll.*, 569 N.E.2d 252, 256 (Ill. App. Ct. 1991)). But this refers to the determination of whether the parties have created an enforceable contract, which turns on whether they described their "essential obligations" in definite and certain terms. *Id.* at 851; *accord Acad. Chi. Publishers v. Cheever*, 578 N.E.2d 981, 983-84 (Ill. 1991). The contract between CitiFinancial and The Patrick Group meets this test; the essence of the parties' agreement was to transfer the mortgage in exchange for $140,000.

The real question here is whether the obligation to transfer physical possession of the note—or at least a copy—was part of the parties' agreement. This is a question of fact. *See Mulliken v. Lewis*, 615 N.E.2d 25, 27 (Ill. App. Ct. 1993) ("Whether a contract exists, its terms,

and the intent of the parties are *questions of fact* for the trier of fact." (citation omitted)); *see also Otto v. Variable Annuity Life Ins. Co.*, 134 F.3d 841, 848 (7th Cir. 1998); *Estate of Kern v. Handelsman*, 491 N.E.2d 1275, 1280 (Ill. App. Ct. 1986). Accordingly, the pertinent inquiry is whether The Patrick Group has produced enough evidence to convince a reasonable fact finder that the parties agreed CitiFinancial would transfer the original or a copy of the note.

The Patrick Group has met its burden of production. In the district court, it relied on three pieces of evidence. The first was its letter to CitiFinancial offering to purchase "the note secured by" the mortgage; this offer was subject to certain conditions, one of which was "[v]erification of all back-up documents including but not limited to the Note." The second piece of evidence was the assignment executed by the parties, which provided that CitiFinancial "grants, assigns and transfers . . . all beneficial Interest under [the mortgage] . . . TOGETHER with the notes therein described or referred to, the money due and to become due thereon with Interest, and all rights accrued or to accrue under [the mortgage]." Finally, Patrick Cogswell submitted an uncontested affidavit in which he testified that the parties agreed CitiFinancial was required to transfer both the original note *and* the mortgage to The Patrick Group.

As even CitiFinancial agrees, this evidence is open to different interpretations. But the district court's analysis shows it mistakenly believed it could resolve the issue on the cross-motions for summary judgment, when a

reasonable fact finder could accept either party's proffered interpretation. For example, the district court discounted The Patrick Group's offer letter because it said only that The Patrick Group would have an opportunity to "verify" the note and was silent as to whether CitiFinancial would have to "transfer" the note. This does not conclusively resolve the issue. To the contrary, that the note was mentioned in the offer letter demonstrates that The Patrick Group believed that the transfer of the note was part of the transaction.

Next, the district court discounted the language of the assignment by interpreting that document to mean only that CitiFinancial "transfer[red] . . . all beneficial interest under . . . the notes" and had no bearing on whether CitiFinancial was required to transfer physical possession of the note. The court's interpretation is one plausible reading of this evidence but is hardly conclusive; a reasonable fact finder could reject it in favor of The Patrick Group's interpretation.

Finally, the district court rejected the Cogswell affidavit because Cogswell also testified that he requested the original note and the mortgage on several occasions *after* the parties came to an agreement. In the district court's view, this course of conduct indicated that any obligation to turn over the note did not arise as part of the parties' *original* agreement. Again, this is one possible interpretation of Cogswell's testimony, but it is not the only reasonable one; Cogswell might simply have been reminding CitiFinancial of its promise. The Patrick Group is entitled to have reasonable inferences drawn in

its favor, *Akande v. Grounds*, 555 F.3d 586, 589 (7th Cir. 2009), but the district court's analysis shows that it essentially resolved the factual dispute itself.

CitiFinancial takes issue with The Patrick Group's argument on appeal that it was entitled to the original note *or a copy*, noting that the Cogswell affidavit and the complaint claim entitlement to the *original*. *Cf. Caremark*, 493 F.3d at 851 (finding relevant for purposes of determining whether a contract existed as a matter of law the fact that a party adopted inconsistent positions). This hardly makes a difference. For reasons we will explain in a moment, either one would have changed the outcome in the foreclosure proceeding. In addition, CitiFinancial argues that The Patrick Group's course of conduct suggests that transfer of the note was not a term of the parties' agreement. On this point CitiFinancial notes that The Patrick Group executed the purchase agreement and attempted to foreclose on the property without ever seeing the note. The apparent argument is that if The Patrick Group really thought copies of both the note *and* the mortgage were required to foreclose, it would have waited until it had physical possession of both of these documents.[2] On summary judgment this argument is unconvincing. Evaluating the weight of the evidence

---

[2] CitiFinancial also argues that The Patrick Group waived its breach-of-contract claim by attempting to foreclose on the mortgage, claiming that this conduct is inconsistent with an intent to enforce any contractual right to receive the note. *See Wikoff v. Vanderveld*, 897 F.2d 232, 241 (7th Cir. 1990); *Wald v. Chi. Shippers Ass'n*, 529 N.E.2d 1138, 1147 (Ill. App. Ct. 1988). We see no inconsistency.

is a task for a jury, not a judge, and the evidence here is not so one-sided that no reasonable fact finder could agree with The Patrick Group's interpretation. *See, e.g.*, *Wheeler v. Lawson*, 539 F.3d 629, 633-34 (7th Cir. 2008). "[T]he district court was not presented with a situation where it could simply interpret the contract as a matter of law," and as such, it is the jury's responsibility to, "in light of all the documentary and testimonial evidence, [glean] the intent of the parties and [determine] the terms of the contract." *Otto*, 134 F.3d at 848.

There remains one final loose end on this issue. On remand the district court might conclude that the obligation to transfer physical possession of the note (or a copy) is a "missing term" in the contract that should be supplied by a court as a matter of law. *See, e.g.*, *Cheever*, 578 N.E.2d at 984 ("It is not uncommon for a court to supply a missing material term, as the reasonable conclusion often is that the parties intended that the term be supplied by implication."). Courts are generally reluctant to imply missing contract terms; this reluctance flows from a concern about mistakenly binding contracting parties to terms outside their agreement. *E.g.*, *Architectural Metal Sys., Inc. v. Consol. Sys., Inc.*, 58 F.3d 1227, 1229 (7th Cir. 1995) ("The more willing the courts are to interpolate missing terms, the more difficult it is for the recipient of a vague offer to interpret the intentions behind the offer."). Even so, the conduct of the parties or customary practice may suggest that the purchaser of a mortgage must receive the note, a copy, or other documentary evidence establishing ownership of the debt as an implicit term of the parties' contractual

understanding, especially since a party may not transfer its interest in the mortgage without transferring its interest in the debt. *See Moore*, 366 N.E.2d at 599. We express no opinion on this question. Because The Patrick Group never raised this argument in this court, we leave the matter for the district court to consider in the first instance.

## B. Damages Caused by the Alleged Breach

The district court's alternative basis for entering summary judgment for CitiFinancial was that CitiFinancial's failure to turn over the original or a copy of the note was not the cause of The Patrick Group's damages. The Patrick Group argues that causation is established as a matter of law because the state-court decisions would have been different if it could have produced an original or a copy of the note. CitiFinancial maintains that because there were alternative ways of proving ownership of the note, the dismissal of the foreclosure action was not caused by its failure to deliver the note.

We begin with the observation that the particular causation question here is a legal, not a factual one. Although the general rule is that the determination of causation is for the fact finder, Illinois courts apply a special rule in breach-of-contract claims where the asserted damage is caused by an adverse outcome of a judicial proceeding. *See, e.g.*, *O'Neil v. Cont'l Bank, N.A.*, 662 N.E.2d 489, 496 (Ill. App. Ct. 1996). In *O'Neil* the plaintiff submitted a bid to purchase real estate in a bankruptcy proceeding; the plaintiff claimed the defen-

dant agreed to support confirmation of the bid in the bankruptcy court. When the time came for the defendant to so, however, the defendant remained silent and the bankruptcy judge accepted a competitor's bid. In the ensuing breach-of-contract action, the Illinois Appellate Court held that as a matter of law, the defendant's breach caused the plaintiff's bid to fail. *Id.* at 497. The causation inquiry, the *O'Neil* court said, was a legal question for the court if the bankruptcy judge acted "in his role as 'judge,' not as 'fact finder.'" *Id.* at 496.

Under *O'Neil*, as we have noted, the causation inquiry in this context is a legal question; the state courts that rejected The Patrick Group's foreclosure action were acting in their capacity as judges and not as fact finders. The trial court in the foreclosure action took the issue out of the jury's hands by entering a directed verdict against The Patrick Group—a decision the appellate court affirmed. These courts concluded that The Patrick Group failed to make out a prima facie case because it had not shown it was a "noteholder," and in Illinois the question of whether a plaintiff has presented a prima facie case is a question of law. *E.g.*, *People ex rel. Sherman v. Cryns*, 786 N.E.2d 139, 148 (Ill. 2003). Since the Illinois courts acted in their capacity as judges, not as fact finders, this particular causation question is a legal one.

*O'Neil* is also instructive because it emphasizes that in a breach-of-contract action like this one, which turns on how the defendant's conduct affected the outcome of a judicial proceeding, the proper question to ask at the causation stage is what a reasonable court "should have

done" had the defendants followed through on their agreement. 662 N.E.2d at 496. The inquiry therefore focuses on what a reasonable court should have done in the foreclosure action had CitiFinancial given The Patrick Group the original or a copy of the note secured by the mortgage.[3]

This question turns on principles of Illinois mortgage-foreclosure law. Generally speaking, only a mortgagee can foreclose on property, and a mortgagee must (at a minimum) be "the holder of an indebtedness . . . secured

---

[3] The parties briefly dispute who bears the burden of proving causation. *O'Neil* contains language suggesting that the burden of proof on causation shifts from the plaintiffs to the defendants if the plaintiffs show that the defendant's breach "materially contributed" to the outcome of the judicial proceeding. *O'Neil v. Cont'l Bank, N.A.*, 662 N.E.2d 489, 496-97 (Ill. App. Ct. 1996). But this language is drawn from RESTATEMENT (SECOND) OF CONTRACTS § 245 (1981), and that section addresses causation in the context of determining when a party's failure to perform a condition means the party has breached its contract. *Accord Cummings v. Beaton & Assocs., Inc.*, 618 N.E.2d 292, 306 (Ill. App. Ct. 1992). In this case, by contrast, we are confronted with the ultimate question of whether a defendant's breach caused the plaintiff's damages.

We need not resolve the matter here. Plaintiffs normally bear the burden of proving the elements of their claims, *see TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 633 (7th Cir. 2007); *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 66 (Ill. 1987); *Dyduch v. Crystal Green Corp.*, 582 N.E.2d 302, 305 (Ill. App. Ct. 1991), and for reasons we will explain, The Patrick Group has established causation as a matter of law.

by a mortgage." 735 ILL. COMP. STAT. 5/15-1208. Under the *Uniform Commercial Code*, which Illinois has adopted, 810 ILL. COMP. STAT. 5/1-101 *et seq.*, a key requirement to being a holder is physical possession of the note secured by the mortgage. *See id.* 5/1-201(b)(21)(A) (defining a holder as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession"). Had CitiFinancial delivered the original or a copy of the note, The Patrick Group would in turn have been able to produce it in the foreclosure proceeding and thus fill the evidentiary void on which the Illinois trial and appellate courts rested their adverse decisions. A reasonable court under these circumstances would have allowed The Patrick Group to proceed with the foreclosure. It follows, then, that CitiFinancial's failure to deliver the note or a copy to The Patrick Group caused the foreclosure action to fail.

CitiFinancial raises two arguments in response, which do not address causation so much as they address whether The Patrick Group "use[d] all reasonable means to mitigate [its] damages." *Pokora v. Warehouse Direct, Inc.*, 751 N.E.2d 1204, 1213 (Ill. App. Ct. 2001). First, CitiFinancial contends that The Patrick Group could have asked it to provide a lost-note affidavit, which could then have been used to establish ownership of the debt secured by the mortgage and thus foreclose on the property. Second, CitiFinancial claims that The Patrick Group could have filed a personal-judgment action against the property owners based on its ownership interest in the note. Neither of these arguments carries the day.

A lost-note affidavit from CitiFinancial would not have conclusively established The Patrick Group's ability to foreclose on the mortgage. The Illinois rules of civil procedure provide that if a claim rests upon a written instrument, as foreclosure actions do, the plaintiff must attach a copy of the written instrument to the pleading. 735 ILL. COMP. STAT. 5/2-606. It is true that if the instrument is not available, a party may proceed with the action by relying on an affidavit explaining why the instrument is not available and describing its terms, *id.*; this is commonly called a "lost note affidavit." The *Uniform Commercial Code* contains a similar concept, allowing a party to enforce a lost, stolen, or destroyed instrument if it can prove the terms of the instrument and its right to enforce the instrument. *See* 810 ILL. COMP. STAT. 5/3-309(b).

CitiFinancial's argument assumes that a party may succeed in a foreclosure action under 735 ILL. COMP. STAT. 5/15-1208 so long as it can produce a lost-note affidavit. Even if we assume that Illinois law permits a party to use a lost-note affidavit as part of its proof,[4] a lost-note

---

[4] In Illinois a party may foreclose on a mortgage without suing to enforce the underlying promissory note. *See Hickey v. Union Nat'l Bank & Trust Co. of Joliet*, 547 N.E.2d 4, 7 (Ill. App. Ct. 1989). Only mortgagees may foreclose upon property, and a mortgagee is defined as "the holder of an indebtedness . . . secured by a mortgage," "any person designated or authorized to act on behalf of such holder," or "any person claiming through a mortgagee as successor." 735 ILL. COMP. STAT. 5/15-

(continued...)

---

[4] (...continued)
1208. But no published Illinois decisions address whether a party may foreclose upon a mortgage if it *owns* the interest in the note (as CitiFinancial argues) or whether the party must show that it *holds* the note in order to foreclose upon the mortgage.

The inquiry is made more complicated by the fact that by concluding that The Patrick Group could not enforce the mortgage, the Illinois Appellate Court treated these concepts as interchangeable. The appellate court observed that the trial court had entered a directed verdict because the "plaintiffs lacked any interest in the debt, or, put another way, were not holders of the note and, therefore, not entitled to foreclose the mortgage," and concluded that The Patrick Group was not the noteholder because CitiFinancial "did not transfer the note to plaintiffs and . . . the plaintiffs never had possession of it."

*O'Neil* instructs that we consider how a reasonable court should have acted if The Patrick Group had presented a lost-note affidavit. As we have noted, there are no precedential Illinois decisions to guide us, but other courts have in some circumstances concluded that a party may foreclose so long as it shows it owns the underlying debt. *See Ocwen Fed. Bank, FSB v. Harris*, No. 99-C-658, 2000 WL 1644377, at *4 (N.D. Ill. Oct. 24, 2000) (interpreting Illinois law to allow a foreclosure to proceed even though note was missing because there was no dispute that plaintiff had title to the mortgage and the underlying debt); *accord Atl. Nat'l Trust, LLC v. McNamee*, 984 So. 2d 375, 378-79 (Ala. 2007); *New England Sav. Bank v. Bedford Realty Corp.*, 680 A.2d 301, 309-10 (Conn. 1996). We will assume for the sake of argument that Illinois law would allow The Patrick Group to proceed with foreclosure if a lost-

(continued...)

affidavit would not have helped The Patrick Group under the circumstances of this case. Lost-note affidavits are most commonly used to prove the terms of the underlying debt; they are rarely enough by themselves to prove ownership of a debt. Although a few courts have allowed foreclosure to proceed based on a lost-note affidavit, the affidavits in these cases also attached a copy of the underlying original note. *E.g.*, *First Fed. Sav. & Loan Ass'n of Chi. v. Chi. Title & Trust Co.*, 508 N.E.2d 287 (Ill. App. Ct. 1987) (finding that an affidavit and copies of note and mortgage were sufficient to support foreclosure action). We are not aware of any case in Illinois in which a lost-note affidavit by itself was enough to prove ownership of the underlying debt, and CitiFinancial has not identified other documentary or testimonial evidence that, in combination with a lost-note affidavit, would have filled the evidentiary vacuum identified by the Illinois trial and appellate courts in The Patrick Group's foreclosure action.

Thus, CitiFinancial's ability to provide a lost-note affidavit if The Patrick Group had asked is simply a red herring. This is especially so considering the gap in the chain of title in this case. The decisions of the state trial and appellate courts reflect an understandable concern that CitiFinancial might not have been the true owner of the debt. Because neither The Patrick Group nor

---

[4] (...continued)
note affidavit could have convinced a reasonable court that it owned the note.

CitiFinancial could produce an original or even a copy of the note, there remained the possibility that the note was actually held by another who would be entitled to enforce it against the property owners. This concern was reasonable in light of the questions raised by the ambiguous state of the title record. Illinois law is clear that a mortgage may not be transferred unless the underlying debt is also transferred. *In re BNT Terminals, Inc.*, 125 B.R. 963, 969 (Bankr. N.D. Ill. 1990) (applying Illinois law)*; Moore*, 366 N.E.2d at 599. It might have been theoretically possible to establish ownership of the underlying debt by tracing it through a title search back to the original mortgagee. *See Fin. Freedom v. Kirgis*, 877 N.E.2d 24, 45 (Ill. App. Ct. 2007) (allowing a foreclosure action to proceed when the plaintiff produced testimonial evidence, a copy of the mortgage, and evidence that the mortgage was recorded). But that possibility would not have helped The Patrick Group here given the unexplained gap in the title record. Accordingly, the fact that The Patrick Group might have obtained a lost-note affidavit from CitiFinancial does not alter the conclusion that CitiFinancial's failure to deliver an original or a copy of the note caused the Illinois state courts to reject The Patrick Group's foreclosure action.

Finally, CitiFinancial argues that The Patrick Group could have filed a personal-judgment action against the property owners based on its interest in the note. A personal-judgment action amounts to an effort to enforce the note, and the normal rule under the *Uniform Commercial Code* is that a party may not enforce a negotiable instrument unless it has physical possession of the note.

810 ILL. COMP. STAT. 5/3-301 (class of parties entitled to enforce negotiable instruments under Illinois law is limited to "the holder of the instrument" or "a nonholder in possession of the instrument"); *Locks v. N. Towne Nat'l Bank of Rockford*, 451 N.E.2d 19, 20-21 (Ill. App. Ct. 1983). Obviously, The Patrick Group could not meet this requirement because it never had possession of the note. As we have discussed, Illinois allows a party to enforce a lost, stolen, or destroyed instrument under certain circumstances, 810 ILL. COMP. STAT. 5/3-301, 5/3-309, and here, The Patrick Group was entitled to acquire whatever rights CitiFinancial had in the note, *see* FREDERICK M. HART & WILLIAM F. WILLIER, NEGOTIABLE INSTRUMENTS UNDER THE UNIFORM COMMERCIAL CODE § 12.03(1) (2009) ("[T]he owner of an instrument may not be in possession of it. Such non-holder transferees are protected by the property principle that a transferee of property, be it real property, tangible personal property or intangible property, obtains all of the rights of his or her transferor as a result of the transfer.").

Put another way, The Patrick Group might have been able to proceed with a personal-judgment action if it could establish that CitiFinancial "was in possession of the instrument and entitled to enforce it when loss of possession occurred," that "the loss of possession was not the result of a transfer . . . or a lawful seizure," and that CitiFinancial "cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of

process." 810 ILL. COMP. STAT. 5/3-309(a). But this is just a different way of requiring The Patrick Group to prove that CitiFinancial owned and transferred the debt, and we have already explained why a reasonable court would conclude that The Patrick Group could not make this showing. Accordingly, a personal-judgment action to recover the amount of the past-due debt would have failed.

In short, as a matter of law, The Patrick Group's damages were caused by CitiFinancial's failure to deliver an original or a copy of the note secured by the mortgage.[5] The open factual question is whether the parties' agreement required CitiFinancial to do so, and on this the evidence is disputed. We therefore REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

---

[5] We do not address the separate question of the amount of The Patrick Group's damages.

---